UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JOSHUA LAUGHLIN, *et al.*,

        Plaintiffs,

v.                                            Case No. 16-C-1342

JIM FISCHER, INC.,

        Defendant.

## DECISION AND ORDER

Plaintiffs Joshua Laughlin and Greg Scotto, Jr., (the "Named Plaintiffs") brought this wage-and-hour collective and putative class action against their former employer, Defendant Jim Fischer, Inc., on their own behalf and on behalf of other similarly situated hourly jobsite employees. They allege that Defendant violated the jobsite employees' rights to regular and overtime pay under the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, *et seq.*, and Wisconsin's wage law, Wis. Stat. § 109.01, *et seq*. Specifically, they allege that Defendant failed to treat their travel time to and from jobsites as hours worked for which they were owed compensation, failed to account for 401(k) contributions on prevailing wage jobs when determining the regular rate of pay for overtime purposes, erroneously payed daily overtime instead of weekly overtime on prevailing wage jobs, and incorrectly payed weekly overtime at the end of the workweek based on the final job worked rather than the average weekly regular rate. The court has jurisdiction over the FLSA claims pursuant to 28 U.S.C. § 1331 and over the state law claims pursuant to 28 U.S.C. § 1367.

Previously, the court granted the Named Plaintiffs' motion for conditional certification of a collective FLSA class under 29 U.S.C. § 216(b). ECF No. 39. This matter comes before the court

on the Named Plaintiffs' motion for certification of their state law claims under Federal Rule of Civil Procedure 23 (ECF No. 50) and Defendant's motion to decertify the conditional FLSA collective class (ECF No. 66). For the reasons stated below, the Named Plaintiffs' motion to certify a Rule 23 class will be granted, and Defendant's motion to decertify the conditional FLSA collective class will be denied.

## BACKGROUND

Defendant is a concrete contractor that does business throughout northeastern Wisconsin. ECF No. 30 ¶¶ 2–3. The Named Plaintiffs are hourly jobsite employees formerly employed by Defendant, and they bring both their FLSA and Wisconsin law claims on behalf of similarly situated hourly jobsite employees. This court's earlier order conditionally certifying a collective action on the FLSA claims permitted the mailing of notice to a class consisting of "[a]ll persons who are or were employed by Jim Fischer, Inc. as hourly jobsite employees during the time period on or after October 6, 2013." ECF No. 39 at 15. The court concluded that the Named Plaintiffs made an adequate initial showing that they were similarly situated to the conditional class members with regard to claims for travel time pay, overtime computation on prevailing wage jobs for which they received 401(k) contributions, and Defendant's daily overtime policies. *Id.* at 4. Eight individuals have filed a notice of consent to opt in as plaintiffs in the FLSA action, bringing the size of the conditional class to ten members, including both Named Plaintiffs. ECF Nos. 40–47. As will be discussed below, however, Defendant disputes this number as part of its motion for decertification of the conditional FLSA class. ECF No. 67 at 4.

In addition to opposing Defendant's motion to decertify the FLSA conditional class, the Named Plaintiffs have filed a motion to certify a Rule 23 class consisting of similar jobsite employees.

2

The Named Plaintiffs define the proposed Rule 23 class as follows: "All hourly employees of Jim Fischer Inc., who performed work for Jim Fischer Inc. on a jobsite on or after October 6, 2014, excluding owners." ECF No. 50. The Named Plaintiffs assert that the class consists of at least 40 hourly jobsite employees employed by Defendant between October 6, 2014, and the end of 2016. Pl.'s Br., ECF No. 51 at 9–11.

## ANALYSIS

### I. Motion to Certify State Law Claims

The class action is "an exception to the usual rule that litigation is conducted by and on behalf of the individual named parties only." *Califano v. Yamasaki*, 442 U.S. 682, 700–01 (1979). To obtain certification, the "proposed class must satisfy the requirements of Rule 23(a), as well as one of the three alternatives in Rule 23(b)." *Messner v. Northshore Univ. HealthSystems*, 669 F.3d 802, 811 (7th Cir. 2012) (citing *Siegel v. Shell Oil Co.*, 612 F.3d 932, 935 (7th Cir. 2010)). Rule 23(a) serves as a gatekeeper to ensure that a class format is an appropriate procedure for adjudicating a particular claim. *Bell v. PNC Bank Nat'l Ass'n*, 800 F.3d 360, 373 (7th Cir. 2015). Accordingly, Rule 23(a) imposes four requirements: numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a). As noted, a proposed class must meet one of the requirements of Rule 23(b) in addition to the four requirements in Rule 23(a). The Named Plaintiffs seek certification under Rule 23(b)(3). That rule allows for certification of classes seeking monetary damages when "questions of law or fact common to the class members predominate over any questions affecting individual members" and when the "class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

3

In conducting the Rule 23 analysis, the court should not turn the class certification proceedings into a dress rehearsal for trial on the merits of the case. *See, e.g.*, *Schleicher v. Wendt*, 618 F.3d 679, 685 (7th Cir. 2010). Nevertheless, "a court may not simply assume the truth of the matters as asserted by the plaintiff." *Messner*, 669 F.3d at 811. Rather, "[a] party seeking class certification must affirmatively demonstrate his compliance with the Rule—that is, he must be prepared to prove that there are in fact sufficiently numerous parties, common questions of law or fact, etc." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011). "If there are material factual disputes, the court must 'receive evidence . . . and resolve the disputes before deciding whether to certify the class.'" *Messner*, 669 F.3d at 811 (citing *Szabo v. Bridgeport Machines, Inc.*, 249 F.3d 672, 676 (7th Cir. 2001)). The Named Plaintiffs bear the burden of showing that a proposed class meets the Rule 23 requirements by a preponderance of the evidence. *Id*.

Although the Named Plaintiffs' brief in support of their certification motion addresses all four Rule 23(a) requirements as well as the Rule 23(b)(3) requirements, Defendant's brief develops only two arguments in opposition to certification. First, Defendant contends that the Named Plaintiffs fail to establish commonality, as required by Rule 23(a). Second, Defendant argues that a class action is not the superior mechanism for resolving the Named Plaintiffs' state law claims, as required by Rule 23(b)(3). The court will address Defendant's arguments at each of the relevant steps in the analysis.

**A. Numerosity**

Considering first the numerosity requirement, under Rule 23(a)(1) the plaintiff must show that "the class is so numerous that joinder of all members is impractical." The Seventh Circuit has recognized that a class consisting of as few as forty members could satisfy the numerosity

4

requirement. *Pruitt v. City of Chicago*, 472 F.3d 925, 926–27 (7th Cir. 2006). The Named Plaintiffs assert that the challenged travel time and overtime policies applied to all of Defendant's hourly employees, and they identify exactly 40 different non-owner employees who worked on projects and received hourly wages from Defendant between October 2014 and the end of 2016. Pl.'s Br., ECF No. 51 at 2–3 (citing ECF Nos. 52-1, 52-2, 52-3, 52-4). Because Defendant does not oppose certification on numerosity grounds, the court concludes that the class of at least 40 members identified by the Named Plaintiffs satisfies Rule 23(a)(1)'s numerosity requirement.

**B. Commonality**

Turning to Rule 23(a)(2)'s "commonality" requirement, a plaintiff seeking class certification must next show that "there are questions of law or fact common to the class." The Supreme Court has interpreted the commonality requirement to mean that the claims of the proposed class must depend on a common contention that is "of such a nature that it is capable of classwide resolution—which means that the determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke." *Wal-Mart*, 564 U.S. at 350. "What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Id.* (alteration in original) (quoting Richard A. Nagareda, *Class Certification in the Age of Aggregate Proof*, 84 N.Y.U. L. Rev. 97, 132 (2009)). "[A] court need only find a single common question of law or fact . . . ." *Chicago Teachers Union, Local No. 1 v. Bd. of Educ. of City of Chi.*, 797 F.3d 426, 434 (7th Cir. 2015) (citing *Wal-Mart*, 564 U.S. at 359).

5

The Named Plaintiffs assert that each of their claims raise questions of fact or law that are common to the whole class. With regard to travel time in particular, the Named Plaintiffs argue that their claims raise two common questions: (1) whether Defendant had a uniform, unofficial policy requiring employees to report to the shop to receive their jobsite assignments and (2) whether filling out time cards at the shop after working at a jobsite constitutes a principal activity. Pl.'s Br., ECF No. 51 at 12. Answering those questions would resolve whether travel to and from the jobsite, respectively, was compensable, the Named Plaintiffs argue. Defendant challenges the commonality of this aspect of the Named Plaintiffs' claim, however, insisting that this question is best resolved on an individual basis. Def.'s Br., ECF No. 55 at 6. Defendant reiterates that, as a general matter, it did not require employees to report to the shop in the morning, employees could drive directly to the jobsite if they so chose, employees received compensation and travel pay if they were required to arrive at the shop before traveling to the jobsite, and not all employees were required to go to the shop to load before travel to or after travel from a jobsite. ECF No. 30 ¶¶ 6–8; *see also* ECF No. 56-1. As a result, Defendant argues, resolving the Named Plaintiffs' travel time claim will require individual inquiries to determine whether particular employees were required to report to the shop or load a truck before or after working at a jobsite on particular days.

The Named Plaintiffs' claim that Defendant maintained an unofficial policy requiring jobsite employees to report to the shop seems to raise a question common to all class members similar to the common question identified by the Seventh Circuit in *Bell v. PNC Bank, National Ass'n*, 800 F.3d 360 (7th Cir. 2015). There, the Seventh Circuit agreed with the plaintiff bank employees that they raised a common question as to whether "PNC [had] an unofficial policy or practice that required employees class-wide to work off-the-clock overtime hours." *Id.* at 374. Here, there is a

6

factual dispute as to whether Defendant unofficially required jobsite employees to report to the shop each morning to receive their daily jobsite assignments. As the Named Plaintiffs point out, Wis. Admin. Code § DWD 272.12(2)(g)5. provides that, "[w]here an employee is required to report at a meeting place to receive instructions or to perform other work there, . . . the travel from the designated place to the workplace is part of the day's work, and must be counted as hours worked regardless of contract, custom, or practice." The Named Plaintiffs therefore acknowledge that the success or failure of their travel time claim with regard to travel to the jobsite turns on whether they can prove the existence of the unofficial reporting policy that they allege. Pl.'s Br., ECF No. 52 at 12–13.

Defendant misses the mark in arguing that the Named Plaintiffs' travel time claim turns on individual inquiries that are not susceptible to common resolution. From Defendant's perspective, resolving the travel time claim will require the court to determine whether any particular employee was required to load a truck, unload a truck, or otherwise report to the shop on a particular day. But the Named Plaintiffs have alleged the existence of an unwritten reporting policy that applied in practice to all employees, and they concede that their travel time claims will rise or fall together based on their success in proving the existence of such a policy. Although a determination that an unofficial reporting policy existed may subsequently require individualized proof of damages by particular employees, "[i]t is routine in class actions to have a final phase in which individualized proof must be submitted." *Suchanek v. Sturm Foods, Inc.*, 764 F.3d 750, 756 (7th Cir. 2014). Despite the individual inquiries that may be necessary to establish precise damages, the claims ultimately turn on resolution of a common question regarding Defendant's alleged daily reporting policy and practices.

7

As for the Named Plaintiffs' other claims—that Defendant did not account for 401(k) payments when calculating the overtime rate of pay on prevailing wage jobs and that Defendant's practice of paying daily overtime for prevailing wage jobs resulted in the underpayment of weekly overtime—Defendant does not challenge the Named Plaintiffs' contention that these also raise common questions of law or fact. Even more so than the Named Plaintiffs' travel time claim, these claims seem susceptible to common resolution across the class. Under the Jim Fischer, Inc. Savings and Retirement Plan, all employees over the age of 18 (with minor exceptions) are eligible to receive contributions to a 401(k) plan to satisfy the fringe benefit requirements for jobs worked pursuant to prevailing wage laws. ECF No. 30-2 at 1–4. Whether the Named Plaintiffs are due overtime related to these 401(k) contributions therefore turns upon the answer to the common question of whether those contributions qualified for exclusion from the regular rate of pay. Likewise, Defendant's Employee Handbook provides that, "[o]n prevailing wage jobs, any hours worked in excess of 10 hours per day will be paid at time and one-half (1 1/2) of the prevailing wage job rate." ECF No. 30-3 at 2. The answer to whether this daily overtime policy properly calculates the overtime rate of pay also applies commonly to all members of the class. These questions common to all of the class members thus reinforce the presence of the commonality required by Rule 23(a)(2).

**C. Typicality and Adequacy of Representation**

As with the numerosity requirement, Defendant does not challenge the Named Plaintiffs' assertion that their claims and defenses "are typical of the claims or defenses of the class," as required by Rule 23(a)(3), and that the Named Plaintiffs will "fairly and adequately protect the interests of the class," as required by Rule 23(a)(4). The Supreme Court has remarked on the similarity between the commonality requirement and the typicality and adequacy requirements:

8

> We have previously stated in this context that "[t]he commonality and typicality requirements of Rule 23(a) tend to merge. Both serve as guideposts for determining whether under the particular circumstances maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence. Those requirements therefore also tend to merge with the adequacy-of-representation requirement, although the latter requirement also raises concerns about the competency of class counsel and conflicts of interest." *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 157–158, n. 13 (1982).

*Wal-Mart*, 564 U.S. at 349 n.5 (alteration in original). Because the court has already discussed commonality at length and Defendant does not challenge these aspects of the Named Plaintiffs' certification motion, the court will address the typicality and adequacy requirements only briefly.

"A 'plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory.'" *Keele v. Wexler*, 149 F.3d 589, 595 (7th Cir. 1998) (quoting *De La Fuente v. Stokely–Van Camp, Inc.*, 713 F.2d 225, 232 (7th Cir. 1983)). Although named plaintiffs may satisfy the typicality requirement "even if there are factual distinctions between the claims of the named plaintiffs and those of other class members, the requirement 'primarily directs the district court to focus on whether the named representatives' claims have the same essential characteristics as the claims of the class at large.'" *Muro v. Target Corp.*, 580 F.3d 485, 492 (7th Cir. 2009) (internal quotation mark omitted) (quoting *De La Fuente*, 713 F.2d at 232). "[T]here must be enough congruence between the named representative's claim and that of the unnamed members of the class to justify allowing the named party to litigate on behalf of the group." *Spano v. Boeing Co.*, 633 F.3d 574, 587 (7th Cir. 2011).

The Named Plaintiffs here clearly satisfy the typicality requirement, as they allege injuries by Defendant consistent with claims for which they seek certification. Both Named Plaintiffs declare

9

that they were directed to report to the Appleton shop each morning as a general practice, unless they received specific instructions to report directly to a jobsite, yet they cite examples of weeks for which they were not paid for their travel time. ECF No. 25 ¶ 2; ECF No. 26 ¶ 2; *see, e.g.*, ECF No. 52-13 at 13. They similarly cite examples of weeks in which pay records show that they received 401(k) contributions and overtime pay, but the contributions to the 401(k) were not counted as part of the regular rate of pay when calculating the overtime rate of pay. *See, e.g.*, ECF No. 52-11 at 1, 9–10. With regard to Defendant's daily overtime policy, they cite examples of weeks in which each Named Plaintiff received daily overtime calculated based on a lower regular rate than work that they subsequently performed after the fortieth hour of the week for which they then received only regular pay. *See, e.g.*, *id.* at 9–10 (showing Laughlin received daily overtime pay based on $20 regular rate despite subsequent work after week's fortieth hour at $22.14 regular rate); ECF No. 27-9 at 10 (showing Scotto received daily overtime pay based on $22.14 regular rate despite subsequent work after week's fortieth hour at $33.46 regular rate). The Named Plaintiffs' pay records further show that they both received overtime pay at rates based on the type of work they did each week, rather than the average regular rate of pay across the week. *See, e.g.*, ECF No. 52-11 at 9-10. Because the Named Plaintiffs' experiences are therefore consistent with the claims that they seek to pursue on behalf of the Rule 23 class, they satisfy the typicality requirement.

As already noted, the adequacy requirement involves an inquiry into the competency of class counsel, as well as into any conflicts of interest between the class and its representatives. *Wal-Mart*, 564 U.S. at 349 n.5; *see also In re Sw. Airlines Voucher Litig.*, 799 F.3d 701, 714–15 (7th Cir. 2015) ("[O]ne purpose of the adequacy inquiry under Rule 23(a)(4) is 'to uncover conflicts of interests between named parties and the class they seek to represent.'" (quoting *Amchem Prods., Inc.*

10

*v. Windsor*, 521 U.S. 591, 625 (1997))). "In many cases, . . . the requirement of typicality merges with the further requirement that the class representative 'will fairly and adequately protect the interests of the class.'" *CE Design, Ltd. v. Kind Architectural Metals, Inc.*, 637 F.3d 721, 724 (7th Cir. 2011) (quoting Fed. R. Civ. P. 23(a)(4)). Defendant neither questions the competency of the Named Plaintiffs' counsel to represent the class nor identifies any conflicts between the Named Plaintiffs and the other members of the proposed class. The court likewise is not aware of any conflicts that would undermine the adequacy of Laughlin and Scotto to represent the proposed class. Accordingly, the court finds that the Plaintiffs meet the Rule 23(a)(4) adequacy requirement.

**D. Predominance and Superiority**

Although the proposed class fulfills the Rule 23(a) requirements, the court must still assess whether, as the Named Plaintiffs assert, the proposed class also satisfies Rule 23(b)(3), which requires that "the court find[] that the questions of law or fact common to class members predominates over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Rule 23(b)(3) further provides a non-exhaustive list of matters for the court to consider when evaluating predominance and superiority: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions"; "(B) the extent and nature of any litigation concerning the controversy already begun by or against class members"; "(C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum"; and "(D) the likely difficulties in managing a class action." Rule 23(b)(3)(A)–(D).

Defendant contends that the proposed class cannot satisfy the superiority requirement. Citing opinions from other district courts in this circuit, Defendant argues that, where the Named Plaintiffs

11

are already proceeding with an opt-in collective action under the FLSA, allowing them to proceed with an opt-out Rule 23 class raising essentially identical state law claims could improperly circumvent the FLSA's opt-in procedure for collective adjudication. *See McClain v. Leona's Pizzeria, Inc.*, 222 F.R.D. 574 (N.D. Ill. 2004) ("[A]llowing McClain to use supplemental state-law claims to certify an opt-out class in federal court would undermine Congress's intent to limit these types of claims to collective actions. McClain cannot circumvent the opt-in requirement and bring unnamed parties into federal court by calling upon state statutes similar in substance to the FLSA that lack the opt-in requirement."); *see also Harper v. Yale Int'l Ins. Agency*, No. 03 C 3779, 2004 WL 1080193 (N.D. Ill. May 12, 2004); *Muecke v. A-Reliable Auto Parts & Wreckers, Inc.*, No. 01 C 2361, 2002 WL 1359411 (N.D. Ill. June 21, 2002).

The Seventh Circuit's decision in *Ervin v. OS Restaurant Services, Inc.*, however, forecloses Defendant's argument. 632 F.3d 971 (7th Cir. 2011). Noting that several districts had concluded that an FLSA collective action could not coexist in a single action with a Rule 23 class addressing identical state law claims, the Seventh Circuit squarely rejected the reasoning underlying such a rule:

> We conclude that there is no categorical rule against certifying a Rule 23(b)(3) state-law class action in a proceeding that also includes a collective action brought under the FLSA. . . . In combined actions, the question whether a class should be certified under Rule 23(b)(3) will turn—as it always does—on the application of the criteria set forth in the rule; there is no insurmountable tension between the FLSA and Rule 23(b)(3). Nothing in the text of the FLSA or the procedures established by the statute suggests either that the FLSA was intended generally to oust other ordinary procedures used in federal court or that class actions in particular could not be combined with an FLSA proceeding.

*Id.* at 973–74. The court further observed that, "[s]hould either or both groups prevail on the merits, each group member will receive only the relief that is prescribed under the law governing her part of the case. Some may be part of both the FLSA group and the Rule 23 class; some may be in one but not the other." *Id.* at 978.

12

Defendant makes a half-hearted attempt to distinguish *Ervin* in a footnote in its brief, explaining that, although Defendant is aware of the *Ervin* decision, "Defendant argues . . . that Plaintiffs in this specific lawsuit are attempting to circumvent the opt-in provisions of the FLSA by bringing identical state law claims. Such a tactic is not permitted." Def.'s Br., ECF No. 55 at 7 n.1. But Defendant cites no authority in support of this assertion, and the body of its superiority argument cites only cases that predate *Ervin*. In light of *Ervin*, the existence of a conditional FLSA opt-in class in this action does not mean that a Rule 23 class cannot be a superior mechanism for resolving the Named Plaintiffs' state law claims.

Moreover, additional considerations suggest that a class action provides a superior mechanism to fairly and efficiently adjudicate the Named Plaintiffs' claims. Assessing in a single proceeding the extent of Defendant's liability, if any, for unpaid travel time and overtime owed to all of the proposed class members is superior to litigating dozens of individual wage-and-hour claims. *See Thorogood v. Sears, Roebuck and Co.*, 547 F.3d 742, 744 (7th Cir. 2008). The Named Plaintiffs also concede that each individual class member's damages will be modest. Pl.'s Br., ECF No. 51 at 25 ("[T]he overtime computation . . . is likely to result in tens rather than hundreds of dollars owed per week even during workweeks when the violations did occur.") As a result, each class member's individual interest in controlling the litigation is minimal given the size of the claims, especially when any damages will be determined following the resolution of liability. S*ee Hughes v. Kore of Ind. Enter., Inc.*, 731 F.3d 672, 675 (7th Cir. 2013). For these reasons, the Named Plaintiffs have made a satisfactory showing that a Rule 23 class is the superior method for resolving their state law claims.

13

Finally, the court must assess whether questions of law or fact common to the proposed class predominate over questions affecting individual class members. "[A] common question predominates over individual claims if 'a failure of proof on the [common question] would end the case' and the whole class 'will prevail or fail in unison.'" *Bell*, 800 F.3d at 378 (quoting *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 459–60 (2013)). "[C]ommon questions can predominate if a 'common nucleus of operative facts and issues' underlies the claims brought by the proposed class." *Messner*, 669 F.3d at 815 (quoting *In re Nassau Cty. Strip Search Cases*, 461 F.3d 219, 228 (2d Cir. 2006)). "If, to make a prima facie showing on a given question, the members of a proposed class will need to present evidence that varies from member to member, then it is an individual question," but "[i]f the same evidence will suffice for each member to make a prima facie showing, then it becomes a common question." *Id.* (internal quotation marks omitted) (quoting *Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir. 2005)).

Under this standard, the court concludes that the Named Plaintiffs present several predominant questions of fact and law that mean that the proposed class members' claims will prevail or fail in unison: Did Defendant maintain an unofficial policy requiring jobsite employees to report to the shop each day? Is completing a time card at the shop after jobsite work a principal activity? May 401(k) contributions on prevailing wage jobs be excluded from the regular rate of pay when calculating the overtime rate of pay? Does Defendant's policy of paying daily overtime on prevailing wage jobs result in the underpayment of weekly overtime? When class members work at varying rates of pay throughout the week, should the overtime rate of pay be calculated based on the average regular rate across the week? Ultimately, whether Defendant is liable to the proposed class members for unpaid regular or overtime pay will turn on the resolution of each of these questions, and the

14

answer to each question will apply uniformly to all members of the proposed class. Accordingly, the court finds that the Named Plaintiffs have satisfied the Rule 23(b)(3) predominance requirement, meaning they have made an adequate showing in support of class certification.

**II. Motion to Decertify FLSA Conditional Class**

As noted above, in a previous order the court conditionally certified the Named Plaintiff's FLSA collective action pursuant to 29 U.S.C. § 216(b). ECF No. 39. The FLSA permits collective actions "against any employer . . . by any one or more employees for and on behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). Employees or former employees must give their consent in writing to become a party to a collective action brought pursuant to § 216(b). Therefore, unlike a typical class action suit under Rule 23, where unwilling parties must "opt out" of the class, the FLSA requires employees to "opt in" to the class. *Woods v. N.Y. Life Ins. Co.*, 686 F.2d 578, 579–80 (7th Cir. 1982). Since the class was conditionally certified, 8 individuals have consented to join the collective action. ECF Nos. 40–47.

Before the court now is Defendant's motion to decertify the FLSA collective action. ECF No. 66. At the second step of an FLSA collective action, typically on a defendant's motion for decertification, courts determine whether plaintiffs who have opted in are, in fact, similarly situated. *Brabazon v. Aurora Health Care, Inc.*, No. 10-C-714, 2011 WL 1131097, at *2 (E.D. Wis. Mar. 28, 2011). Specifically, the court assesses whether continuing as a collective action will provide efficient resolution in one proceeding of common issues of law and fact. *See Hoffmann-La Roche v. Sperling*, 493 U.S. 165, 170 (1989). On a motion to decertify the conditional class, the plaintiff retains the burden of producing a record demonstrating that certification is appropriate. *Ellis v. Elgin Riverboat Resort*, 217 F.R.D. 415, 419 (N.D. Ill. 2003). In determining whether parties are

15

"similarly situated," the court considers factors like any disparate factual and employment settings of the individual plaintiffs, the various individualized defenses available to the defendant, and fairness and procedural considerations. *Thiessen v. Gen. Elec. Capital Corp.*, 267 F.3d 1095, 1102–03 (10th Cir. 2001), *cited with approval in Espenscheid v. DirectStat USA*, *LLC*, 705 F.3d 770, 771–72 (7th Cir. 2013).

FLSA collective actions differ from Rule 23 class actions in that the detailed procedural provisions set forth in Rule 23 that have no counterpart in the FLSA. *Espenscheid*, 705 F.3d at 772. Despite these differences between the two, the Seventh Circuit has indicated, albeit in dicta, that the standards for certification under the FLSA and Rule 23 should be treated as the same, explaining that "there isn't a good reason to have different standards for the certification of the two different types of action, and the case law has largely merged the standards, though with some terminological differences." *Id*. at 771–72. Here, the FLSA and Rule 23 classes largely overlap, consisting of all individuals employed by Defendant as hourly jobsite employees after, respectively, October 6, 2013, and October 6, 2014. Because the Rule 23 analysis above adequately addresses each aspect of the "similarly situated" analysis under the FLSA, the court will deny Defendant's motion to decertify the opt-in collective class.

Defendant makes only a single substantive argument on the merits of its motion for decertification of the conditional FLSA class, essentially asserting that the conditional class lacks the numerosity that would be required of a non-FLSA class under Rule 23(a)(1). Defendant begins by noting that four of the opt-in plaintiffs—Jose Aguilar, Salvador Solorzano, Nathan Johnston, and Jeremy Muskevitsch—ended their employment with Defendant *before* October 6, 2013, the opening date for the FLSA conditional class. Randall Fischer Decl., ECF No. 69 ¶¶ 2–5. Although the

16

Named Plaintiffs dispute Randall Fischer's basis for knowing the final employment dates of those four individuals, Defendant notes that it provided those dates to the Named Plaintiffs in its Answer to Plaintiff's Second Set of Discovery Requests. ECF No. 73-1 at 5–6. Defendant has not moved to dismiss these four opt-in plaintiffs, presumably because there would be no need to dismiss them if the court were to grant its decertification motion.

Regardless of whether the conditional class consists of the two Named Plaintiff plus four or eight opt-in plaintiffs, however, the court would not decertify the conditional FLSA class based on the small class size. There is no doubt that an opt-in class consisting of six or ten plaintiffs would not meet the 40-member threshold necessary to presumptively satisfy the numerosity requirement under Rule 23. *Pruitt*, 472 F.3d at 926–27. But the Seventh Circuit's decision in *Espenscheid* acknowledging the similar analyses under Rule 23 and 29 U.S.C. § 216(b) did not expressly engraft a numerosity requirement onto the FLSA conditional certification standard. 705 F.3d at 772 (noting "the absence from the collective-action section of the [FLSA] of the kind of detailed procedural provisions found in Rule 23").

Only one case that Defendant cites to make the numerosity argument in this context even involved an FLSA claim, yet there the court decertified a conditional FLSA class only after denying a motion for certification of a Rule 23 class based on the absence of numerosity. *See De Loen v. Grade A Constr., Inc.*, No. 16-cv-348-jdp, 2017 WL 6375821, at *1–3 (W.D. Wis. Dec. 13, 2017). By contrast, in a more recent case the Western District of Wisconsin cited the Seventh Circuit's decision in *Espenscheid* but nonetheless denied a motion to decertify a conditional FLSA class involving 11 opt-in plaintiffs after granting a motion to certify a Rule 23 class with at least 40 members. *Schilling v. PGA Inc.*, 293 F. Supp. 3d 832, 842 (W.D. Wis. 2018). Unlike in the Rule

17

23 context, the court noted, there is no case like *Pruitt* establishing a threshold participation number that is presumptively necessary to maintain a collective action. *Id.* The court added that it had previously declined to decertify a conditional FLSA class consisting of eight opt-in plaintiffs. *Id.* (citing *Bitner v. Wyndham Vacation Resorts, Inc.*, No. 13-cv-451-wmc, 2016 WL 7480428, at *15 (W.D. Wis. Dec. 29, 2016)). Despite the small size of the opt-in class here, the court similarly finds that a collective action is an appropriate mechanism for resolution of the Named Plaintiffs' claims.

## CONCLUSION

For the reasons stated above, the Named Plaintiffs' motion for class certification (ECF No. 50) is **GRANTED**. The court hereby certifies the following Rule 23 class: All hourly employees of Jim Fischer, Inc., who performed work for Jim Fischer, Inc., on a jobsite on or after October 6, 2014, excluding owners. Counsel of record for the Named Plaintiffs is appointed as class counsel. The Clerk is directed to set this matter on the Court's calendar for a hearing to address the form of the notice to be provided to potential class members consistent with Federal Rule of Civil Procedure 23(c)(2)(B). Appearance by telephone shall be allowed. Finally, the Defendant's motion to decertify the FLSA collective class (ECF No. 66) is **DENIED**.

**SO ORDERED** this 4th day of June, 2018.

s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court
