UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JOSHUA LAUGHLIN
and GREG SCOTTO JR.,
on behalf of themselves and all
others similarly situated,

                Plaintiffs,

    v.                                 Case No. 16-C-1342

JIM FISCHER, INC.,

                Defendant.

## DECISION AND ORDER GRANTING-IN-PART AND DENYING-IN-PART SUMMARY JUDGMENT

Plaintiffs Joshua Laughlin and Greg Scotto, Jr., brought this hybrid wage-and-hour collective class and class action against their former employer, Defendant Jim Fischer, Inc. (Fischer), on behalf of themselves and others similarly situated hourly job-site employees. Plaintiffs allege that Fischer violated the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, *et seq.*, and Wisconsin's wage laws, Wis. Stat. § 109.01, *et seq.* Specifically, Plaintiffs allege that Fischer failed to compensate them for travel time to and from the shop to job sites on those occasions when they did work at the shop, improperly excluded 401(k) contributions on prevailing wage jobs when determining the regular rate of pay for overtime purposes, failed to pay overtime on all hours worked over forty hours due to offsetting weekly overtime hours with daily overtime hours on prevailing wage jobs, violated Wisconsin law by calculating overtime based on the type of work conducted by Plaintiffs during overtime hours rather than based on their regular rate of pay,

missclassified work done by Plaintiffs on a prevailing wage job, failed to annualize 401(k) and healthcare contributions when calculating contribution credits on prevailing wage jobs, and failed to compensate Scotto for overtime work the week of January 9, 2016. The court has jurisdiction over the FLSA claims pursuant to 28 U.S.C. § 1331 and supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

The court granted Plaintiffs' motion for conditional certification of an FLSA collective action on October 16, 2017, ECF No. 39, and denied Defendant's motion to decertify the collective action and granted Plaintiffs' motion for Rule 23 certification of their state law claims on June 4, 2018. ECF No. 86. Pending before the court now is Plaintiffs' motion for summary judgment. For the reasons set forth below, I now conclude that Plaintiffs' motion for summary judgment should be denied as to all claims except Scotto's claim for unpaid overtime for the week ending January 9, 2016. I also conclude that I erred in denying Defendant's motion to decertify the FLSA collective action and in granting Plaintiffs' motion for Rule 23 class certification of their state law claims. It has now become clear from the briefs and argument on summary judgment that as to all of Plaintiffs' claims, to the extent they have merit, individual factual issues predominate over any common issues. Plaintiffs' collective FLSA action and Rule 23 class action will therefore be decertified, and the case will no longer proceed as a class action.

## BACKGROUND

Laughlin and Scotto are former job site hourly employees of Fischer, a concrete contractor that does business throughout northeastern Wisconsin. Laughlin worked for Fischer between July and August of 2016. Decl. of Joshua Laughlin, ¶ 2, ECF No. 25. Scotto worked for Fischer between 2015 and 2017. Decl. of Greg Scotto, Jr., ¶ 2, ECF No. 26. Laughlin filed this action on

2

October 6, 2016, and Scotto was added as an additional named plaintiff in an amended complaint filed on January 31, 2017. Laughlin and Scotto both claim that, when they were working for Fischer, they would complete their own time cards that listed ten different categories of work in which they were required to record their hours. Pl.'s Proposed Findings of Fact (PPFOF) ¶ 1, ECF No. 76. Company policy required that they record their time loading trucks at the company shop under the column designated "loading" and their time loading trucks at the jobsite as "Laborer." *Id.* ¶ 2. Plaintiffs assert that on some days, they went to the company shop, they spent time loading a truck at the shop and then traveled to the jobsite. *Id.* ¶ 3. Although they were paid for their work loading the truck, they contend they were not paid for the travel time from the shop to the jobsite. *Id.* ¶¶ 3, 4. Both Laughlin and Scotto state that they recorded their time loading the truck on their time cards, but did not record their travel time pursuant to Fischer's policy that an employee is paid for driving between the shop and the jobsite only if he is required to drive a company truck. *Id.* ¶ 5. Both also state that on another day, they returned from a jobsite to the shop and performed 15 minutes of loading work at the shop. Again they state that they did not include travel time pursuant to Fischer policy and were not paid for their travel back to the shop. *Id.* ¶¶ 6, 7. Plaintiffs contend that the company Controller, with the assistance of Jim Fischer's daughter in the summer, was responsible for reviewing their time cards and correcting any errors. *Id.* ¶¶ 7–9.

Plaintiffs further allege that in certain weeks they received overtime pay but claim that it was not calculated on the proper base pay because Fischer failed to use a blended pay rate when the work performed over the week was paid at different rates. Plaintiffs also contend that Fischer's 401(k) contributions for work paid at the prevailing wage rate required for certain government contracts

were not included in the base rate on which the overtime rate of pay was calculated. Additional facts pertinent to the specific issue addressed will be set forth below.

## LEGAL STANDARD

Summary judgment should be granted when the moving party shows that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In other words, the time and expense of the parties and the court should not be wasted on a trial when there are no material facts in dispute, one party is entitled to judgment on those facts, and thus there is nothing to try. In deciding a motion for summary judgment, all reasonable inferences are construed in favor of the nonmoving party. *Foley v. City of Lafayette*, 359 F.3d 925, 928 (7th Cir. 2004). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (quoted source and internal quotation marks omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Parent v. Home Depot U.S.A., Inc.*, 694 F.3d 919, 922 (7th Cir. 2012) (internal quotation marks omitted) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

# ANALYSIS

## A. Compensation for Plaintiffs' Unreported Travel Time Between Fischer's Shop and Job Site When Loading Time Reported on Time Card

Plaintiffs' class travel time claims deal with two questions: "(1) whether Defendant had a uniform, unofficial policy requiring employees to report to the shop to receive their jobsite assignments and (2) whether filling out time cards at the shop after working at a jobsite constitutes a principal activity." ECF No. 86 at 6. In their motion for summary judgment Plaintiffs are seeking summary judgment on a very limited question: whether Fischer's failure to compensate them for unrecorded travel time to and from job sites when their time cards indicated they spent time loading or unloading at Fischer's shop violates both federal law, 29 C.F.R. § 785.38, and state law, Wis. Admin. Code DWD § 272.12(2)(g)5. Fischer claims it did not have actual or constructive knowledge of Plaintiffs' alleged uncompensated activities and that even if it did, such activities are exempt from compensation because the time spent was *de minimis*.

When Fischer hired an employee, its Controller sat down with the employee to discuss the company's various policies, including how to properly fill out daily timecards. Employees were told that, if they spent time in the shop in the morning loading a company vehicle, their work day commenced at that time, and they should record all of their time on their timecards. Fischer's Employee Handbook states, "Travel time to and from the jobsite is not a part of your hours of pay. If your supervisor has specifically instructed you to drive a company vehicle to or from the job site you will be paid for the travel time." ECF No. 83-5 at 4. Once timecards were turned in, Fischer's Controller reviewed all employee timecards, and totaled the amount of time spent at the jobsite and the amount of time doing other work, such as loading and driving.

In support of their claim, Plaintiffs use Laughlin's timecard from August 1, 2016, as an example. On that day Laughlin recorded 15 minutes for loading a vehicle at the shop, recorded no driving time, and recorded 10.5 hours for time spent working at the job site. ECF No. 79-2. Because Laughlin recorded time in the loading column of the timecard, Plaintiffs argue Fischer, through the exercise of reasonable diligence, should have known Laughlin would had to have spent time traveling that day to or from the shop to the work site and that he was not being compensated for that travel time.

Both the FLSA and Wisconsin's Minimum Wage provide that "[t]ime spent by an employee in travel as part of his principal activity, such as travel from job site to job site during the workday, must be counted as hours worked." 29 C.F.R. § 785.38; Wis. Admin. Code § DWD 272.12(2)(g)5. Fischer does not contest that any travel time by Plaintiffs after loading or unloading company vehicles at the shop would be compensable. Def.'s Br. in Opp'n, ECF No. 81 at 7. Rather, Fischer claims it did not know about the travel time, and thus is not required to compensate Plaintiffs for the time worked.

Under the FLSA, "[e]mployers must . . . pay for all work they know about, even if they did not ask for the work, even if they did not want the work done, and even if they had a rule against doing the work." *Allen v. City of Chicago*, 865 F.3d 936, 938 (7th Cir. 2017). This strict rule, however, "stops short of requiring the employer to pay for work it did not know about, and had no reason to know about." *Id.* "The employer's knowledge can be either actual or constructive." *Id*. Wisconsin law likewise provides that work that is suffered or permitted but not requested by the

employer counts as work time so long as the employer knew or had reason to believe that the work is being performed. § DWD 272.12(2)(a)1.

Plaintiffs claim that Fischer had constructive knowledge of Plaintiffs' unpaid work. "An employer has constructive knowledge of an employee's work if it should have acquired knowledge of that work through reasonable diligence." *Id.* Relevant to the determination of whether an employer has constructive knowledge of an employee's unreported work time is the cause for the employee's failure to report. While an employer can exercise diligence by "establishing a reasonable process for an employee to report uncompensated work time," establishing such a process "will not protect the employer if the employer prevents or discourages accurate reporting in practice." *Id.* at 938–39; *White v. Baptist Mem'l Health Care Corp.*, 699 F.3d 869, 876 (6th Cir. 2012) (collecting cases) (On the one hand, "if an employer establishes a reasonable process for an employee to report uncompensated work time the employer is not liable for non-payment if the employee fails to follow the established process." On the other hand, the existence of a reasonable process or reporting system is not sufficient where an employer prevents or discourages employees from reporting overtime.). "The reasonable diligence standard asks what the employer should have known, not what 'it could have known.'" *Id.* at 943 (quoting *Hertz v. Woodbury Cty., Iowa*, 566 F.3d 775, 782 (8th Cir. 2009)). "The requirements of reasonable diligence depend on the facts of each case." *Id.*

Although Plaintiffs did not record their drive time, they did record time spent loading at the shop in the loading column of their time sheets. Plaintiffs contend that, because Fischer reviewed Plaintiffs' time cards, Fischer should have known that on days Plaintiffs recorded time in the loading column, they needed to travel from the shop to the job site and that they were not being

compensated for that driving time despite the fact that it was not reported. The fact that Fischer had access to records alone, however, is not sufficient to establish constructive knowledge as "[a]ccess to records indicating that employees were working overtime, however, is not necessarily sufficient to establish constructive knowledge." *White*, 699 F.3d at 874 (quoting *Hertz*, 566 F.3d at 783). Whether Fischer had constructive knowledge might well depend on the number of and frequency with which violations occurred. Fischer asserts that there was no unspoken company policy that encouraged employees not to report their time and that had Plaintiffs reported time in the driving column they would have been compensated for it. Because there is a dispute of material fact over whether Fischer knew Plaintiffs were not reporting all of the travel time, as well as why Plaintiffs did not report their travel time, Plaintiffs are not entitled to summary judgment on this issue.

It has also become clear to the court upon examination of the more developed record of the case at this point that certification of Plaintiffs' collective FLSA action and Rule 23 class action on this issue is no longer appropriate. Rule 23(c)(1)(C) states that "[a]n order that grants or denies class certification may be altered or amended before final judgment." "[T]he district court has the power at any time before final judgment to revoke or alter class certification if it appears that the suit cannot proceed consistent with Rule 23's requirements." *All. to End Repression v. Rochford*, 565 F.2d 975, 977 (7th Cir. 1977). "If the evidence calls into question the propriety of defining a class in a particular way, then the definition must be modified or subclasses certified. A class defined early in a suit cannot justify adjudicating hypothetical issues rather than determining the legality of what actually happens." *Fonder v. Sheriff of Kankakee Cty.*, 823 F.3d 1144, 1147 (7th Cir. 2016). Although FLSA collective-actions are not the same as Rule 23 Class actions, the same

standards generally apply to each "and the case law has largely merged the standards." *Espenscheid v. DirectSat USA, LLC*, 705 F.3d 770, 772 (7th Cir. 2013).

Relevant to whether class certification and collective action is appropriate under Rule 23(b) is whether questions of law or fact common to the proposed class or collective group predominate over questions affecting individual class members. "[A] common question predominates over individual claims if 'a failure of proof on the [common question] would end the case' and the whole class 'will prevail or fail in unison.'" *Bell v. PNC Bank, Nat. Ass'n*, 800 F.3d 360, 378 (7th Cir. 2015) (quoting *Amgen Inc. v. Conn. Ret. Plans & Tr. Funds*, 568 U.S. 455, 459–60 (2013)). "'If the same evidence will suffice for each member to make a prima facie showing, then it becomes a common question,'" but "'[i]f the same evidence will suffice for each member to make a prima facie showing, then it becomes a common question.'" *Messner v. Northshore Univ. HealthSystem*, 669 F.3d 802, 815 (7th Cir. 2012) (quoting *Blades v. Monsanto Co.*, 400 F.3d 562, 566 (8th Cir. 2005)). Similarly, Rule 23(a) requires that "[t]he claims must depend upon a common contention that is capable of class-wide resolution." *Bell v. PNC Bank N.A.*, 800 F.3d 360, 374 (7th Cir. 2015). "What matters to class certification . . . is not the raising of common 'questions'—even in droves—but, rather the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation. Dissimilarities within the proposed class are what have the potential to impede the generation of common answers." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (emphasis in original) (internal citations omitted). "[A] court weighing class certification must walk a balance between evaluating evidence to determine whether a common question exists and predominates, without weighing that evidence to determine whether the plaintiff class will ultimately prevail on the merits." *Bell*, 800 F.3d at 377.

9

It has also become clear from consideration of this issue that the determination of the claim for each employee will require an individualized consideration of the circumstances surrounding the hiring, training, and behavior of each employee to determine whether they reasonably believed they should not record travel time even if they performed loading work at the shop before or after going to a jobsite. Even to determine the number of occasions on which such travel time went uncompensated will require individualized examination of each employee's time card. The policy of Fischer, as stated in its handbook, copies of which were provided to each employee, clearly states that such travel was to be compensated. As a result, the claims for unpaid travel time to or from the shop prior to or after loading work do not meet the commonality requirement of Rule 23 or what is needed for an FLSA collective action to be justified. For this reason, the collective and Rule 23 classes will be decertified.

## B. Inclusion of Prevailing Wage 401(k) Contributions When Computing Amount of Overtime Pay Owed

The parties dispute whether Fischer's prevailing wage 401(k) contributions must be included when computing the base pay rate on which the overtime rate is required to be paid. This dispute centers on whether the requirements for exemption under 29 U.S.C. § 207(e)(4) have been satisfied. Under § 207(e)(4), "contributions irrevocably made by an employer to a trustee or third person pursuant to a bona fide plan for providing old-age, retirement . . . or similar benefits for employees" are excluded when calculating an employees regular rate, which in turn would affect the amount of overtime pay to which an employee is entitled.

While the statute does not define the term "bona fide plan," the Department of Labor's interpretation of that term is set forth at 29 C.F.R. § 778.215. "As an interpretive regulation, it does

10

not have the force of binding law." *Howard v. City of Springfield, Illinois*, 274 F.3d 1141, 1146 (7th Cir. 2001) (citing *Shaw v. Prentice Hall Computer Publ'g, Inc.*, 151 F.3d 640, 642 (7th Cir. 1998)). "It is therefore not entitled to deference, although courts may rely on it as persuasive evidence both of Congress's legislative and the Secretary's regulatory intent." *Id.* In addition, "[b]ecause the FLSA gives no 'textual indication' that its exemptions should be construed narrowly, 'there is no reason to give [them] anything other than a fair (rather than a "narrow") interpretation.'" *Encino Motorcars, LLC v. Navarro*, 138 S. Ct. 1134, 1142 (2018) (quoting SCALIA, READING LAW, at 363).

### 1.    29 C.F.R. § 778.215(a)(2): Primary Purpose Test

Plaintiffs first dispute whether Fischer's 401(k) plan satisfies the second provision of the Department of Labor's guidance of what constitutes a bona fide plan. The provision states "[t]he primary purpose of the plan must be to provide systematically for the payment of benefits to employees on account of death, disability, advanced age, retirement, illness, medical expenses, hospitalization, and the like." § 778.215(a)(2).

Plaintiffs argue that the primary purpose of Fischer's plan is not to provide benefits to employees, but rather that Fischer makes 401(k) contributions for the sole purpose of satisfying prevailing wage requirements based on the fact that Fischer has not made any 401(k) contributions following the prevailing wage repeal in 2016. A plain reading of the statute, however, shows that this requirement simply delineates the types of acceptable ends the payments may be directed to, and is not imposing a subjective test on the employer's true motivations.

Plaintiffs also argue that the plan's primary purpose is not to provide retirement benefits because the plan allows hardship withdrawals for non-retirement related expenses, such as tuition

or medical expenses. These withdrawals, however, are only allowed after Fischer's contributions are entirely vested in an employee's retirement account. The fact that the plan allows for hardship withdrawals does not affect Fischer's primary purpose for contributing the funds in the first place.

Plaintiffs' reliance on *Gilbertson v. City of Sheboygan*, 165 F. Supp. 3d 742, 750 (E.D. Wis. 2016), and *Flores v. City of San Gabriel*, 824 F.3d 890 (9th Cir. 2016), is misplaced. In *Gilbertson*, the payments to employees for health benefits were not exempt under § 207(e)(4) because they failed to satisfy the requirement of § 778.215(a)(4) that they be made irrevocably to a trustee or third person. 165 F. Supp. 3d at 750. And the cash-in-lieu of benefits payments to employees in *Flores* were also not exempt for reasons unrelated to the plan's primary purpose. 824 F.3d at 901 ("Because the City pays the unused benefits directly to its employees and not 'to a trustee or third person,' its cash-in-lieu of benefits payments cannot be excluded under § 207(e)(4)."). I therefore conclude that Fischer's plan meets the primary purpose test of § 778.215(a)(2).

## 2. 29 C.F.R. § 778.215(a)(3): Specified or Definite Amount Test

Plaintiffs next argue that the formula in Fischer's plan does not satisfy the requirements of the Department of Labor's guidance on what constitutes a bona fide plan as set forth in 29 C.F.R. § 778.215(a)(3). Under § 778.215(a)(3), in a plan or trust, either:

(i)    The benefits must be specified or definitely determinable on an actuarial basis; or

(ii)   There must be both a definite formula for determining the amount to be contributed by the employer and a definite formula for determining the benefits for each of the employees participating in the plan; or

(iii)  There must be both a formula for determining the amount to be contributed by the employer and a provision for determining the individual benefits by a method which is consistent with the purposes of the plan or trust under section 7(e)(4) of the Act.

12

(iv) Note: The requirements in paragraph (a)(3)(ii) and (iii) of this section for a formula for determining the amount to be contributed by the employer may be met by a formula which requires a specific and substantial minimum contribution and which provides that the employer may add somewhat to that amount within specified limits; provided, however, that there is a reasonable relationship between the specified minimum and maximum contributions. Thus, formulas providing for a minimum contribution of 10 percent of profits and giving the employer discretion to add to that amount up to 20 percent of profits, or for a minimum contribution of 5 percent of compensation and discretion to increase up to a maximum of 15 percent of compensation, would meet the requirement. However, a plan which provides for insignificant minimum contribution and permits a variation so great that, for all practical purposes, the formula becomes meaningless as a measure of contributions, would not meet the requirements.

Neither party asserts that Fischer's plan satisfies the requirements of subsection (i). Turning to sections (ii) and (iii), Plaintiffs argue that a plan that does not meet the requirements specified in subsection (iv) cannot satisfy subsections (ii) or (iii). In particular, Plaintiffs place great weight on the last sentence of subsection (iv), claiming that any plan which permits insignificant minimum contributions, including contributions of zero, or allows for too great a variation cannot satisfy subsections (ii) or (iii). Since zero contributions and great variations are possible under Fischer's 401(k) plan, Plaintiffs allege that Fischer's plan does not satisfy subsection (iv), and thus it is not a bona fide plan.

Plaintiffs, however, overlook earlier language that makes it apparent that subsection (iv) does not apply to all plans. Subsection (iv) states that "a formula for determining the amount to be contributed by the employer *may* be met by a formula" that has "a specific and substantial minimum contribution" and allows an employer to add to that amount so long as there is a "reasonable relationship between the specified minimum and maximum contributions." § 778.215(a)(3)(iv) (emphasis added). It does not state that all formulas must satisfy the requirements. In addition, the later language—including the last sentence—describes examples of formulas that "require a specific

and substantial minimum contribution" that would and would not satisfy requirements. Thus, "[t]he considerations in § 778.215(a)(3)(iv) are triggered only when the 'formula requires a specific and substantial minimum contribution.'" *Russell v. Gov't Emps. Ins. Co.*, No. 17-CV-672, 2018 WL 1210763, at *8 (S.D. Cal. Mar. 8, 2018) (holding that a minimum contribution is not mandated by § 778.215(a)(3)(iv). Fischer's plan does not.

The purpose of § 778.215(a)(3)'s requirements are to prevent employers from disguising actual wages as individual benefits to employees in order to avoid having those wages factor into the employee's regular rate of pay for purposes of calculating overtime pay. Looking at Fischer's plan as it relates to 401(k) contributions for work done on prevailing wage jobs, "[an employee] will be paid the base wage on [his or her] check and the amount designated for fringe benefits will be paid, pre-tax, to [his or her] 401-k account (less the company paid portion of [his or her] health insurance, if applicable)." ECF No. 83-5. The formula for employer contribution can be restated as the number of hours worked times the fringe benefit rate, less the company-paid portion of health insurance, equals the amount contributed by Fischer. The employee benefit is equal to the amount contributed by Fischer. Hence, "[t]he formula is definite because [it] quantifies each variable[,] . . . describes those variables' relation to each other," and "does not have a minimum contribution." *Russell*, 2018 WL 1210763, at *8. Further, unlike the plans discussed in § 778.215(a)(3)(iv), Fischer's plan does not allow for any discretion in the amount of contribution made. The number of hours worked, the fringe benefit rate assigned for that particular job, and the amount of the company-paid contributions to an employee's health care plan are the only factors—all of which are not subject to a discretionary decision by Fischer.

Finally, citing to a Department of Labor Opinion Letter (Letter), Plaintiffs assert that subsection (iv) should be interpreted as setting mandatory requirements that all formulas must meet. In the Letter, however, the Department of Labor stated the formula in question was not adequate because "it does not contain a definite formula for determining the amount to be contributed by the employer" and advised amending the plan so that it satisfies "one of the alternatives suggested in subsections (i) through (iv) or section 778.215(a)(3)." DOL Opinion Letter, 1970 WL 26444. The Letter thus sets forth subsection (iv) merely as one of the options that a plan can satisfy, rather than a mandatory requirement that every plan must satisfy.

Fischer's formula is distinguishable from the formula at issue in the Letter. The formula at issue in the Letter provided for contributions of six percent of the total salaries of active participants "provided that no contribution will be made if the company's pre-tax net profits for the plan year are less than $20,000." *Id.* In addition, "[t]he Board of Directors of the company at its discretion may make a greater or lesser contribution for any plan year. . . ." *Id.* Unlike the plan at issue in the Letter, there is no room for discretion in Fischer's plan for the amount to be contributed. Though the amount contributed may vary depending on the value of each variable, the formula itself is fixed. Because Fischer's 401(k) contributions are to a bona fide plan, satisfying the requirements of 29 U.S.C. § 207(e)(4), the contributions are properly excluded when calculating Plaintiffs' regular rate, and Plaintiffs are not entitled to summary judgment on this issue.

### 3.  29 C.F.R. § 778.215(a)(4): **Irrevocable Payment Test**

Plaintiffs next contend that Fischer's contributions to the 401(k) plan should not be excluded because "under § 207(e)(4) Jim Fischer must remit prevailing wage 401(k) contributions to an entity that assumes the usual fiduciary duties over the payments." Pls.' Supplemental Br., ECF No. 105

at 5.  Under § 778.215(a)(4), "[t]he employer's contributions must be paid irrevocably to a trustee or third person pursuant to an insurance agreement, trust or other funded arrangement.  The trustee must assume the usual fiduciary responsibilities imposed upon trustees by applicable law."  The regulation, however, is silent as to whether a third person must assume the usual fiduciary responsibilities.  Because Fischer contributes its non-revocable 401(k) contributions to a third-party custodian, it meets this requirement.

### 4.    29 C.F.R. § 778.215(a)(5): Non-Assignment Test

Subsection (a)(5) of the regulation states: "The plan must not give an employee the right to assign his benefits under the plan nor the option to receive any part of the employer's contributions in cash instead of the benefits under the plan."  In this case, upon termination, employees are required to receive a cash distribution if their vested balance in Fischer's 401(k) plan is $5,000 or less and may elect to receive a cash distribution if their vested balance in the 401(k) plan exceeds $5,000.  From this, Plaintiffs argue that the contributions to the 401(k) plan should not be excluded because the plan allows employees to receive cash in lieu of benefits.  The regulation also provides, however:

> [t]hat if a plan otherwise qualified as a bona fide benefit plan under section 7(e)(4) of the Act, it will still be regarded as a bona fide plan even though it provides, as an incidental part thereof, for the payment to an employee in cash of all or a part of the amount standing to his credit (i) at the time of the severance of the employment relation due to causes other than retirement, disability, or death, or (ii) upon proper termination of the plan, or (iii) during the course of his employment under circumstances specified in the plan and not inconsistent with the general purposes of the plan to provide the benefits described in section 7(e)(4) of the Act.

*Id.* Because the regulation expressly states that plans that permit cash withdrawals to be made to employees at the time their employment ends or for other limited purposes will still be treated as bona fide, Fischer's plan is not in conflict with this specific requirement of the regulation.

Since there is evidence that Fischer's 401(k) plan is a bona fide plan and that the employer's contributions to the plan are properly excluded, Plaintiffs are not entitled to summary judgment on this claim. Plaintiffs' argument that Fischer also violated Wis. Admin. Code DWD § 274.03 by not including 401(k) contributions when calculating Plaintiffs' regular rate also fail.

**C.    Failure to Pay Overtime for All Hours Worked Over 40 Hours**

**1. 29 U.S.C. § 207**

Plaintiffs next claim Fischer failed to properly compensate them for hours worked in excess of forty per week. Under the FLSA, a nonexempt employee who works more than forty hours in a given week must be paid at a higher rate for those excess hours. 29 U.S.C. § 207(a)(1). The overtime rate of pay is "not less than one and one-half times the regular rate at which he is employed." *Id.* The FLSA defines the "regular rate" to "include all remuneration for employment paid to, or on behalf of, the employee," subject to certain exclusions. § 207(e). Plaintiffs contend that Fischer improperly used hour-for-hour offsets—subtracting hours worked above ten on a given day against the forty-hour weekly overtime threshold—when calculating overtime. Plaintiffs assert that Fischer can only offset its weekly overtime obligations on a dollar-for-dollar basis, that is, crediting any amount of daily overtime earned against the weekly amount of overtime owed, rather than on an hour-for-hour basis.

Plaintiffs use the week of July 31 through August 6, 2016, as an example. ECF No. 27-9. During that week, Laughlin reached 40 hours worked for the week after working 9.25 hours on

Thursday, August 4.[1]  Although he had reached 40 hours, he was paid at straight time rates for the final 0.25 hours worked on August 4, and the first 0.50 hours worked on Friday, August 5.  Laughlin was paid at an overtime premium rate for the remaining hours worked on August 5, 2016.  Earlier in the week, Fischer paid Laughlin at a daily overtime premium for 0.75 hours of daily overtime (hours worked over 10 in a day) worked on Monday, August 1.  It appears that the 0.75 hours of daily overtime hours worked was excluded from the calculation of when Laughlin reached 40 hours worked in a week.  As a result, Laughlin received $0.26 less in premium pay than he would have received had the 0.75 hours worked on August 4 and 5 been paid at overtime premium rates.  Plaintiffs argue that it was improper for Fischer to not count or credit the 0.75 hours of daily overtime worked on August 1 against the forty hour weekly threshold for overtime pay, and that Fischer may only offset weekly overtime premiums owed to the employee on a dollar-for-dollar basis, not an hour-for-hour basis.  As a result, Plaintiffs claim that Fischer violated both federal and state law.

However, as Fischer points out, the FLSA also includes another method of calculating the overtime pay rate for time in excess of 40 hours per week.  Specifically, the FLSA provides:

> No employer shall be deemed to have violated subsection (a) by employing any employee for a workweek in excess of the maximum workweek applicable to such employee under such subsection if, pursuant to an agreement or understanding arrived at between the employer and the employee before performance of the work, the amount paid to the employee for the number of hours worked by him in such workweek in excess of the maximum workweek applicable to such employee under such subsection–
>
> . . .

---

[1]  Laughlin worked a total of 10.75 hours on August 1, 10 hours on August 2, 10 hours on August 3, and 9.5 hours on August 4.

18

(2) in the case of an employee performing two or more kinds of work for which different hourly or piece rates have been established, is computed at rates not less than one and one-half times such bona fide rates applicable to the same work when performed during nonovertime hours.

29 U.S.C. § 207(g)(2). According to the regulation interpreting this section, "Under section 7(g)(2) an employee who performs two or more different kinds of work, for which different straight time hourly rates are established, may agree with his employer in advance of the performance of the work that he will be paid during overtime hours at a rate not less than one and one-half times the hourly nonovertime rate established for the type of work he is performing during such overtime hours." 29 C.F.R. § 778.419(a).

There exists at least a factual issue as to whether this exception is met. Fischer's employee handbook informed employees that "[h]ours worked over forty-hours (40) per week will be paid at time and one-half (1 ½) of the job rate." ECF No. 83-5 at 3. As Fischer employees received this handbook prior to their first time on a jobsite and signed the handbook stating that they understood all of its terms, it was permissible for Fischer to calculate overtime premiums based one and one-half times the rate applicable to the specific type of work. That appears to be what Fisher did here. If a bona fide agreement was reached, then no FLSA violation occurred. Plaintiffs' motion for summary judgment on this issue will therefore be denied.

## 2. Wis. Admin. Code DWD § 274.03

Plaintiffs also argue that Fischer violated Wisconsin state law. Pursuant to Wis. Admin. Code DWD § 274.03, "each employer subject to this chapter shall pay to each employee time and one-half the regular rate of pay for all hours worked in excess of 40 hours per week." Plaintiffs argue that because there is no parallel Wisconsin statute to 29 U.S.C. § 207(h)(2), which allows for

daily overtime premium payments to offset the amount of weekly overtime premium payment owed, or 29 U.S.C. § 207(g)(2), which allows for weekly overtime premium payments for employees performing two or more kinds of work to be calculated at one and one-half times the rate of the work being performed, § 207(h)(2) and § 207(g)(2) should not be read into Wis. Admin. Code DWD § 274.03 and therefore that Fischer violated § 274.03 by not paying Plaintiffs time and one-half the regular rate of pay for all hours worked in excess of 40 hours per week because under Wisconsin law an employer "must without exception use the regular rate to compute its employees' overtime pay." Pls.' Supplemental Br., ECF No. 105 at 16.

Federal law can preempt, and thus invalidate, state law "if it would be impossible for a party to comply with both local and federal requirements or where local law 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.'" *Aux Sable Liquid Prods. v. Murphy*, 526 F.3d 1028, 1033 (7th Cir. 2008) (quoting *Hoagland v. Town of Clear Lake*, 415 F.3d 693, 696 (7th Cir. 2005)). "A state law also is pre-empted if it interferes with the methods by which the federal statute was designed to reach this goal." *Int'l Paper Co. v. Ouellette*, 479 U.S. 481, 494 (1987). Regardless of the form of preemption in question, the "ultimate task in any pre-emption case is to determine whether state regulation is consistent with the structure and purpose of the statute as a whole." *Gade v. Nat'l Solid Wastes Mgmt. Assoc.*, 505 U.S. 88, 98 (1992).

Although the FLSA does contain a savings clause, *see* 29 U.S.C. § 218(a) ("No provision of this chapter or of any order thereunder shall excuse noncompliance with any . . . State law municipal ordinance establishing a minimum wage higher than the minimum wage established under this chapter or a maximum workweek lower than the maximum workweek established under

this chapter . . . ."), enforcing Plaintiffs' strict interpretation of Wis. Admin. Code DWD § 274.03 may frustrate Congress' intent to allow employers to use daily overtime premium payments to offset weekly overtime payments and to allow employers to calculate overtime based on the rate for the type of work that is being performed on piece-rate work. If Wis. Admin. Code DWD § 274.03 only permitted employers to pay employees "time and one-half the regular rate of pay for all hours worked in excess of 40 hours per week," then employers would be prevented from utilizing the alternative means of paying and calculating compensation for employees for hours worked over 40 hours per week that Congress set forth in 29 U.S.C. § 207(h)(2) and § 207(g)(2). Consequently, the court finds that an employer does not violate Wis. Admin. Code DWD § 274.03 when it compensates an employee in accordance with 29 U.S.C. § 207(h)(2) and § 207(g)(2). Whether Plaintiffs will prevail on their state claims must await a determination of the federal claims.

But even if Plaintiffs ultimately prevail on their interpretation of the law, what has again become clear on summary judgment is that the case is not an appropriate one for either collective or Rule 23 class consideration. Even if Fischer's method of calculating overtime is found to be a violation, the individualized examination of every time sheet and payroll record for each employee over a two-year period is far too individualized and fact-specific to warrant collective or class treatment. Here, underpayment is not the result of a uniform practice by Fischer, but is dependent upon the particular pay rate for the type of work being performed and when during the course of the week that work is performed. Liability as well as harm are not dependent on a uniform policy, but rather determined by the individual circumstances surrounding each plaintiff. Not only is liability and harm individual to each plaintiff, but even for an individual plaintiff liability and harm will be dependent on the circumstances surrounding each week that employee worked. Class certification

should not be granted where "[q]uestions of individual damage calculations will inevitably overwhelm questions common to the class." *Comcast Corp. v. Behrend*, 569 U.S. 27, 34 (2013). "If, to make a prima facie showing on a given question, the members of a proposed class will need to present evidence that varies from member to member, then it is an individual question." *Messner*, 669 F.3d at 815. Yet the detailed analysis of time cards and payroll records needed to determine whether a loss even occurred and the amount of the loss far outweigh any benefit an employee is likely to realize. I therefore conclude that as to this claim, as well, the collective and Rule 23 class certification should be vacated.

**D.      Classification of Work Performed as General Labor**

Plaintiffs argue that they were not properly compensated for the work they performed on the curb and gutter crew because they were not paid at the cement finisher rate, but rather the lower general laborer rate. Fischer argues that Plaintiffs' work was properly classified and compensated at the general laborer rate.

While working on the curb and gutter crew, Plaintiffs followed behind a concrete machine setting 2 by 12 boards for driveway openings to achieve proper elevation. Finishers would finish the concrete after the boards had been set. When doing this sort of work, Plaintiffs were paid at a rate equal to the general laborer rate, rather than the higher cement finisher rate. Plaintiffs argue that since "[t]he work of setting boards to guide the pitch of the connection between roads and driveways is analogous to the work of setting forms for the pouring of concrete," they should have been compensated at the higher cement finisher rate for their work. Pls.' Br., ECF No. 75 at 20.

Under Wisconsin's prevailing wage laws in effect at the time, hours worked on a prevailing wage project may not "be paid less than the prevailing wage rate in the same or most similar trade

or occupation."  Wis. Stat. § 66.0903(3)(dm) (2016).  "The type of work done for the most similar trade or occupation . . . determine the required minimum prevailing wage rate payable."  Wis. Admin. Code DWD § 290.03(1).

The Wisconsin Department of Workforce Development publishes a Dictionary of Occupational Classifications and Work Descriptions to be used for all Wisconsin public works projects that classifies workers based on the work performed.  The primary purpose of a general laborer is defined as one who "[p]erforms a wide variety of both unskilled and semi-skilled tasks but does not regularly and routinely assist a worker in any other classification by using the tools normally associated with that worker's classification."  DICTIONARY OF OCCUPATIONAL CLASSIFICATIONS AND WORK DESCRIPTIONS,[2] General Laborer.  Typical duties include "[f]it[ing] together and align[ing] forms used to hold concrete in place on highways, streets, curbs, gutters and sidewalks."  *Id.*

The primary purpose of a cement finisher is defined as one who "[s]moothes and finishes surfaces of poured concrete . . . to specified textures using hand or power tools including float, trowel and screed."  DICTIONARY OF OCCUPATIONAL CLASSIFICATIONS AND WORK DESCRIPTIONS,[3] Cement Finisher.  Typical duties include "level[ing], smooth[ing] and shap[ing] surfaces of freshly poured concrete using straightedge, float or power screed."  In addition, a cement finisher "[m]ay

---

[2]  Dictionary accessible at:
https://dwd.wisconsin.gov/er/labor_standards/prevailing_wage_rate/dictionary/dictionary_g.htm (last visited Mar. 30, 2019).

[3]  Dictionary accessible at:
https://dwd.wisconsin.gov/er/labor_standards/prevailing_wage_rate/dictionary/dictionary_c.htm (last visited Mar. 30, 2019).

direct subgrade work, mix concrete and set curb, gutter, sidewalk and pavement forms one (1) board high up to twelve (12) inches. *Id.*

While some of the work performed by Plaintiffs is similar to one of a cement finisher's typical duties, the work performed does not overlap with the primary purpose of a cement finisher—smoothing surfaces using hand or power tools. In addition, compared to the majority of typical duties listed for a cement finisher, the laying of forms is listed as one that a cement finisher "may" perform, suggesting that this is not a typical duty associated with cement finisher. Finally, Plaintiffs did not "regularly and routinely" use the tools normally associated with a cement finisher, which would have been in conflict with the primary purpose of a general laborer and made classification as a cement finisher more appropriate. While Plaintiffs' work may be similar to duties associated with a cement finisher, it is distinguishable. Consequently, Plaintiffs are not entitled to summary judgment on this issue.

**E.      Annualization of 401(k) Contribution Credit and Health Insurance Credit**

Plaintiffs argue that Fischer was required to annualize its 401(k) contributions. Fischer's failure to do so allegedly resulted in Plaintiffs being paid less than the prevailing wage rate assigned to the project. For example, during the week of July 17, 2016, Laughlin worked as a general laborer on a prevailing wage project with a total package rate for general laborers of $38.26, $8.13 of which could be allocated to fringe benefits. Laughlin worked 5.5 hours on the project, earning $30.13 per hour from Fischer as well as $44.72 in total 401(k) contributions. Rather than divide the total 401(k) contribution, $44.72, by the number of hours worked, 5.5, resulting in a 401(k) contribution rate of $8.13 per hour, Plaintiffs argue that Fischer was required to annualize its contributions, and divide the 401(k) contribution by 40 hours. As a result, Laughlin would have received a 401(k)

contribution equal to $1.12 per hour, for a total wage rate of $31.25 per hour on the project, rather than the prevailing wage project rate of $38.26.

In support, Plaintiffs point to the Department of Workforce Development's guidance to employers on how to fill out the prevailing wage on-line survey regarding calculating fringe benefits for reporting purposes. The guidance, in response to the question "how do I figure/calculate fringe benefits" for reporting in the survey, states "[t]o convert the cost of a fringe benefit that was paid weekly, divide the cost of such benefit by 40 hours." STATE OF WISCONSIN DEPARTMENT OF WORKFORCE DEVELOPMENT, Frequently Asked Questions on the Prevailing Wage On-Line Survey.[4] As a result, Plaintiffs argue that Fischer "violated Wisconsin law by figuring the 401(k) credit as 401(k) contributions divided by prevailing wage hours, rather than as weekly 401(k) contributions divided by 40 hours." Pls.' Br., ECF No. 75 at 23.

As Fischer rightly points out, however, there is no Wisconsin law that supports Plaintiffs' contention. The guidance relied on by Plaintiffs is simply instructions to employers for reporting purposes, not a definitive statement of the law. The Department of Workforce Development defines hourly contributions as "the per hour cost of the economic benefits paid to a laborer, worker, mechanic, or truck driver by his or her employer." Wis. Admin. Code DWD § 290.01(10). There is no mention of annualization, either in the definition of economic benefit or in the accompanying notes. The prevailing wage statute that was in effect at the time, Wis. Stat. § 66.0903 (2016), defines prevailing wage rate as the "hourly basic rate of pay, plus the hourly contribution for health insurance benefits, vacation benefits, pension benefits and any other bona fide economic

---

[4] Website accessible at: https://dwd.wisconsin.gov/er/labor_standards/prevailing_wage_rate/faq_pws.htm#1 (last visited Mar. 30, 2019).

benefit, paid directly or indirectly, for a majority of the hours worked." § 66.0903(1)(g)1. Again, there is no mention of annualization or express instruction on how to calculate the hourly contribution.

Plaintiffs' reliance on *Independent Roofing Contractors v. Chao*, 300 Fed. App'x 518, 521–22 (9th Cir. 2008) and *Cody-Zeigler v. Administrator*, 9 Wage & Hour Cas. 2d 557, 2003 WL 23277276 (DOL Review Board 2003), is also misplaced. The proposition that "if an employer provides a year-long benefit, annualization is required to ensure 'that a disproportionate amount of that fringe benefit is not paid out of wages earned'" only applies to "'Davis-Bacon work,'" that is, work on *federally*-funded work projects. *Independent Roofing Contractors*, Fed. App'x at 521 (quoting *Cody-Zeigler*, 9 Wage & Hour at 572). As Plaintiffs have not alleged that the work done on the project was federally funded and have pointed to no statute or case that supports their position, the court finds that Plaintiffs are not entitled to summary judgment on their claim that Fischer was required to annualize their 401(k) contributions.

Plaintiffs, relying on the same Department of Workforce Development survey guidance document, argue that Fischer was also required to annualize its health insurance contributions using a pro-rated portion of 2,080 hours to calculate the per hour credit it received for monthly health insurance premium payments. This argument fails for the same reasons mentioned above. As a result, summary judgment is denied to Plaintiffs on this issue.

## F.     Failure to Compensate Scotto for One Week's Overtime

Scotto alleges that Fischer failed to compensate him for 3.75 hours of overtime worked during the week ending January 9, 2016. Scotto's paycheck lists his pay rate as $16.50 and shows that he received $721.88 for 43.75 hours worked that week. Since $16.50, Scotto's hourly rate,

multiplied times 43.75, the number of hours he worked, equals $721.875—the same amount listed on his check stub—Scotto argues that he clearly was not compensated for 3.75 hours of overtime work.

Although Fischer concedes that the listed hours worked were all from one week and that not paying Scotto overtime pay for the 3.75 hours was a mistake, Fischer argues that the check stub is inadmissible hearsay under Fed. R. Evid. 803(6) because Plaintiffs failed to establish a foundation for the pay stub to be considered a business record. Fischer, however, provides no evidence to support its assertion that the pay stub is not genuine. Fischer's argument that Scotto may have been compensated at a later time is flawed for the same reason as the previous; a defendant is required to "'do more than simply show there is some metaphysical doubt as to the material facts.'" *Waukesha Foundry, Inc. v. Indus Eng'g, Inc.*, 91 F.3d 1002, 1007 (7th Cir. 1996) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)). Even if the check was inadmissible, Jim Fischer admitted that the relevant information, that Scotto was not paid for 3.75 hours of overtime, was true in his deposition. Regarding compensation at a later time, Fischer has offered no proof that it has done so, and it is unclear why it falls to Scotto to prove otherwise as in general "overtime generally must be calculated and *paid* on a pay period by pay period basis." *Howard*, 274 F.3d at 1148 (7th Cir. 2001). As a result, summary judgment is granted in favor of Scotto on this issue.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for summary judgment (ECF No. 74) is **GRANTED-IN-PART** and **DENIED-IN PART**. Summary judgment will be granted as to

Plaintiffs' claim that Fischer failed to compensate Scotto for overtime the week ending January 9, 2016.  Summary judgment will be **DENIED** as to all other claims.

The court also orders that the Rule 23 Class and FLSA collective-action is **DECERTIFIED** with respect to Plaintiffs' remaining claims.  The clerk is directed to schedule this matter for a status conference to discuss further scheduling as well as the need for and contents of remedial notice to opt-in plaintiffs and other class members.

Dated this  31st  day of March, 2019.

s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court