# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF WISCONSIN
# GREEN BAY DIVISION

---

**Joshua Laughlin**
**Greg Scotto Junior**
**Samual Youngblood**
**Jeffrey Dobrecevich**
**Andy Kruger**

**On behalf of Himself and**
**all others similarly situated**

    **Plaintiffs**

    v.     **Case No.** 16-CV-1342

**Jim Fischer Inc.**

    **Defendant.**

---

# FOURTH AMENDED COMPLAINT

---

Plaintiffs, by their attorneys, for their Fourth Amended Complaint against Defendant state as follows:

1. This is a collective action under the Fair Labor Standards Act, and an individual and class action under Wisconsin law by Plaintiffs, current and former employees of Defendant Jim Fischer Inc. ("Jim Fischer"), to seek redress for Jim Fischer's failure to count all of the Plaintiffs' hours worked, failure to compute overtime pay at correct rates, and failure to pay for work performed on prevailing wage projects at the correct rates.

1

## JURISDICTION AND VENUE

2. This court has subject matter jurisdiction under 29 USC §216(b) and 28 U.S.C. §1331 because Plaintiff alleges violations of the FLSA, 29 U.S.C. §201 et seq.

3. This Court has supplemental jurisdiction over the Plaintiff's claims brought under Wisconsin law pursuant to 28 U.S.C. §1367 because they are based upon the same nucleus of operative facts, and therefore form the same case or controversy as their FLSA claims.

4. This Court has personal jurisdiction over the Defendant because the Defendant performed a substantial amount of work in this district, and the Plaintiffs' claims arise from the Defendant's performance of work in, and therefore contacts with this district.

5. Venue is proper in this district pursuant to 28 U.S.C. §1391(b)(2) because a substantial part of the events giving rise to the claims described herein occurred in this district.

## THE PARTIES

6. Plaintiffs are adult residents of the State of Wisconsin who were employed by Jim Fischer during the time period on or after October 5th, 2013. Copies of the FLSA and Wisconsin prevailing wage consent forms signed by Plaintiffs Laughlin and Scotto were previously filed with the Court.

7. Defendant Jim Fischer is a Wisconsin Corporation with a principal place of business located at 2635 S. Casaloma Drive in Appleton, Wisconsin. Jim Fischer performs concrete pouring and other construction work throughout Wisconsin, but mostly within the territory covered by the Green Bay Division of the Eastern District of Wisconsin.

8. Jim Fischer is an employer within the meaning of Wis. Stat. §109.03(1). Jim Fischer is also an employer engaged in interstate commerce within the meaning of the FLSA, 29

2

U.S.C. §203, by, for example, purchasing equipment, materials, and other supplies that were directly or indirectly produced outside Wisconsin, and entering into contracts directly or indirectly with customers located in Minnesota, Wisconsin, and Iowa. At all relevant times, Jim Fischer has had annual gross volume of business at or above $1,000,000.

**FACTS**

9. Jim Fischer required all of its employees to report to its shop located in Appleton, Wisconsin each morning, unless the employee asked for, and was granted permission to report directly to the jobsite. While at the Appleton shop employees would help load trucks, receive work instructions, and then ride together to jobsites. Jim Fischer neither counted as hours worked, nor paid the Plaintiffs for their time spent riding to the jobsites after receiving work instructions or performing other work in the shop, even on some days when it paid the Plaintiffs for performing loading work at the shop.

10. At the end of the day Jim Fischer required all jobsite employees to drive from their last jobsite for the day back to the Appleton shop, unless the employee received permission to drive straight back to their homes. If the Plaintiffs reported to the Jim Fischer shop at the end of their workdays, they would fill out their time cards only after they arrived at the Jim Fischer shop.

11. In response to the Plaintiffs' discovery requests, Jim Fischer has admitted that when the Plaintiffs were hired by it, they would have a meeting with Jim Fischer's controller, and would be told that their work time starts in the company shop, if they rode to the jobsite in a company vehicle.

12. Jim Fischer required all jobsite employees to write down on their time cards the job number and job name for each job that they worked throughout the day, the number of hours that

3

they worked in each trade for each job, each piece of equipment that they operated throughout the day, as well as the amount of time spent operating each piece of equipment.

13. The employees would spend at least 5-10 minutes per day filling out their time cards, which was primarily for Jim Fischer's benefit given that accurate time cards permitted Jim Fischer to accurately keep track of its labor and equipment costs for jobs, to accurately keep track of the hours worked, work experience, and skills development of each of its employees, and correctly bill its customers for its services.

14. In addition to filling out their time cards, Jim Fischer jobsite employees also sometimes helped unload trucks, and performed other work in the shop, after they returned to the Appleton shop from their last jobsite for the day. Jim Fischer neither counted as hours worked, nor paid the Plaintiffs for some of their trips from the last jobsite for the day back to the company shop, where they filled out time cards and performed other work for Jim Fischer.

15. Jim Fischer also did not always pay the Plaintiffs for their time spent receiving work instructions, loading trucks, unloading trucks, and filling out their time cards at the Appleton shop.

16. Jim Fischer maintained records showing when the Plaintiffs were and were not paid for their time spent working in the shop, and driving between the shop and jobsites. When the Plaintiffs were paid for their shop work and driving time, the pay would be classified under mobilization, and paid at the Plaintiffs' shop rate. For each hour that the Plaintiffs worked for Jim Fischer they would either receive a rate of $0, or would receive at least their regular shop rate.

17. Jim Fischer frequently performed work on projects where the minimum rate of compensation for the Plaintiffs was set by the Davis-Bacon Act, State Prevailing Wage Laws, or

4

equivalent laws. According to the employee handbook, which by its own terms is not a contract, and can be revised, supplemented or rescinded at anytime, for prevailing wage projects Jim Fischer would make an hourly contribution to its employees 401(k) account that equaled the total fringe benefit rate shown on the prevailing wage determination.

18. Because the amount of 401(k) contributions received by the Plaintiffs is solely a function of the number of prevailing wage hours that they worked, as well as the applicable fringe benefit rate for each job for the classification(s) that they worked in, the Plaintiffs may receive $0 or thousands of dollars of 401(k) contributions during each contribution period.

19. Jim Fischer did not include the 401(k) contributions that it contributed to the Plaintiffs for their hours worked by prevailing wage projects, when computing their regular rate to be used in computing their overtime pay.

20. Jim Fischer voluntarily paid its employees at overtime rates whenever they worked more than ten hours per day. It would not pay weekly overtime pay to its employees until they have worked a number of hours equal to 40 plus the number of hours during the week when they received daily overtime pay.

21. Because Jim Fischer may use multiple wage rates to compensate its employees for their work during the same workweek, the rates for the types of work performed by the employee during hours worked after 40 hours that Jim Fischer paid at straight time may be higher, than the rates for the types of work for which the employee received daily overtime pay. Consequently, the daily overtime premiums the Plaintiffs actually received did not always fully offset weekly overtime premium pay that they should have, but did not receive.

5

22. Jim Fischer would not make any 401(k) contributions to the Plaintiffs for each of their hours worked on non-prevailing wage projects, or while travelling between projects. Jim Fischer therefore claimed a 401(k) contribution credit that is often higher, than if it had divided its 401(k) contribution during each contribution period by the total number of hours worked by its employees during said contribution period.

23. Jim Fischer made contributions to its employees' 401(k) accounts only during higher paid prevailing wage hours for the purpose of reducing its liability for employment taxes and overtime pay, rather than to contribute to its employees' retirement.

24. Similarly, when Plaintiff Scotto participated in Jim Fischer's health insurance plain in 2016, Jim Fischer computed the hourly value of its employer contribution for Scotto's health insurance based on a work year of approximately 993 hours, which upon information and belief represents the number of hours that Scotto worked for Jim Fischer in 2015.

25. Scotto worked a partial year for Jim Fischer in 2015, given that he did not begin working for Jim Fischer until approximately June of 2015.

26. When it became apparent that Scotto would work substantially more than 993 hours for Jim Fischer in 2016, Jim Fischer did not recalculate the hourly value of its contribution for Scotto's health insurance, and pay to Scotto additional prevailing wages to which he was entitled once the hourly value of employer contributions toward health insurance has been correctly computed.

27. When the Plaintiffs performed overtime work on a non-prevailing wage project, during a week when they received pay at both their shop rate and at a higher prevailing wage rate,

6

Jim Fischer would pay to the Plaintiff a rate equal to 1.5 times their shop rate, rather than 1.5 times the higher average straight time wage rate earned by the employee during the workweek.

28. During the course of their employment with Jim Fischer, both Plaintiffs worked on a crew that engaged in all work required to pour and finish concrete surfaces.

29. Both Plaintiffs spent all of their time on such projects performing either actual concrete finisher work, or preparatory work that was integral and indispensable to the subsequent completion of concrete finisher work by either themselves, or by other members of their crews.

30. With rare exceptions, the Named Plaintiffs were paid for their concrete finishing and related work at the rate for General Laborers, rather than at the often substantially higher rates for Concrete Finishers. When the Plaintiffs complained to Jim Fischer that they should have been classified as, and paid at the higher rate for a concrete finisher, Jim Fischer informed them that they were not quick enough to be paid at the higher rate of a concrete finisher for their concrete finisher work.

31. Jim Fischer has never obtained authorization from the Wisconsin Department of Workforce Development to pay the Plaintiffs as subjourneypersons for their concrete finisher work on prevailing wage projects.

32. Upon information and belief, the Plaintiffs did not receive the correct prevailing wage rate as a laborer, even assuming Jim Fischer can claim a credit equal to the full amount of 401(k) contributions that it made to Laughlin's account for each hour that he worked on a prevailing wage project.

33. Jim Fischer did not always pay Plaintiff Scotto overtime pay for his overtime hours worked.

## COLLECTIVE ACTION ALLEGATIONS

34. Named Plaintiffs bring their First Claim for Relief, pursuant to the Fair Labor Standards Act, on their own behalf and on behalf of all other similarly situated Plaintiffs who were not paid the correct amount of overtime pay because of Jim Fischer's uniform policies of (1) failing to count as hours worked their work in the shop; (2) failing to count as hours worked travel time that is all in a day's work, given that the travel would occur right after their trip to the first jobsite at the beginning of the day, and their trip from the last jobsite back to the Appleton shop at the end of the day; (3) Excluding 401(k) contributions for their hours worked on prevailing wage projects when computing their overtime pay; (4) Not paying the portion of overtime premium pay for hours worked after 40 hours per week, which is not offset by overtime premium pay paid to the employee for daily overtime hours worked.

35. The First Claim for Relief for violations of the FLSA may be brought and maintained as an "opt-in" collective action pursuant to Section 16(b) of FLSA, 29 U.S.C. §216(b), for prospective members of the FLSA Class that are similarly situated to the Named Plaintiffs and have claims that are similar to their first claim for relief.

36. The claims of the Named Plaintiffs are representative of the claims of members of the FLSA Class in that all members of the class were hourly paid employees of Jim Fischer; and were deprived of overtime pay as a result of Jim Fischer's uniform application of its policies concerning determining its employees' hours worked and computing their overtime pay.

## CLASS ALLEGATIONS

37. Named Plaintiffs seek to represent a class of all employees of Jim Fischer who fall within the following class description, pursuant to Rule 23 of the Federal Rules of Civil Procedure:

8

All employees of the Defendant who worked for Jim Fischer Inc. on jobsites on or after October 6, 2014.

38. The persons in the class identified above are so numerous that joinder of all members is impracticable. Upon information and belief, Jim Fischer employs forty or more potential members of the class at any one time. Class members who are former employees of Jim Fischer are widely scattered, thus making joinder even more impractical.

39. There are questions of law and fact common to the Wisconsin Unpaid Wage Class (Rule 23 Class) that predominate over any questions solely affecting individual members of the class, including, but not limited to:

(a). Whether the Davis Bacon Profit Sharing Contributions made by Jim Fischer to the Plaintiffs' accounts constitute contributions to a bona fide fund, plan, or program; so that said contributions can be excluded from computing the employees' rate for overtime pay;

(b). Whether under Wisconsin law overtime pay must be calculated using the Plaintiffs' regular rate, defined as the average wage rate earned by the Plaintiffs during the workweek;

(c). Whether time spent by the Plaintiffs spent working at the shop must both be paid, and be counted as hours worked;

(d). Whether time spent by the Plaintiffs travelling to their first jobsite for the day after working in the shop; and travelling from their last jobsite for the day back to the shop before working in the shop, must both be paid, and must be counted as hours worked;

(e) Whether under DWD §274.02(3), which requires overtime pay whenever employees worked over 40 hours per week, daily overtime premium pay can be used to offset the employer's obligation to pay weekly overtime premium pay.

(f). Whether the Plaintiffs' right to additional travel pay can be created by a verbal promise made by Jim Fischer Inc.

(g). The Appropriate remedy for the Plaintiffs' hours worked that Jim Fischer failed to pay, and/or failed to count as hours worked.

9

40. Named Plaintiffs' claims are typical of those of the Wisconsin Unpaid Wage Class. Named Plaintiff, like other Wisconsin Unpaid Wage Class members, were deprived of straight and overtime pay as a result of Jim Fischer's application of its uniform policies that undercounted their hours worked, and paid overtime pay lower than those required by law.

41. Named Plaintiffs will fairly and adequately protect the interests of the Wisconsin Unpaid Wage Class and has retained counsel experienced in complex wage and hour litigation.

42. A class action is superior to other available methods for the fair and efficient adjudication of the controversy. Defendant's common and uniform policies and practices denied the Wisconsin Unpaid Wage Class the wages for work performed to which they are entitled. The damages suffered by the individual Wisconsin Unpaid Wage Class members are small compared to the expense and burden of individual prosecution of this litigation. In addition, class certification is superior because it will permit the Court to resolve predominate legal questions that drive the resolution of this litigation, while obviating the need for unduly duplicative litigation that might result in inconsistent judgments about Defendant's pay practices.

**Count I.     Overtime Pay Claim Under the Fair Labor Standards Act.**

43. Plaintiffs re-allege, and incorporate by reference, the allegations contained in paragraphs 1- 42 of the Fourth Amended Complaint.

44. Jim Fischer was required by the FLSA to count as hours worked time spent by the Plaintiffs loading and unloading trucks, filling out time cards, and receiving work instructions while at the Appleton shop given that the work was indispensable to Jim Fischer's operation, and was pursued primarily for Jim Fischer's benefit.

10

Case 1:16-cv-01342-WCG   Filed 04/24/19   Page 10 of 17   Document 110

45. Because the Plaintiffs' work in the Jim Fischer shop constitute principal activities, they must be paid for all travel time that occurred between the time when they first and last performed principal activities during the workday, including their drive from the Appleton shop to the first jobsite for the day, and their drive from the last jobsite for the day back to the Appleton shop.

46. The Plaintiffs would have additional overtime hours worked had Jim Fischer counted as hours worked time spent by them performing the work activities described in paragraphs 44-45 of the Third Amended Complaint.

47. 401(k) contributions that Jim Fischer contributed on behalf of the Plaintiffs cannot be excluded from the regular rate computation, given that the contributions were made for the purpose of reducing Jim Fischer's liability for employment taxes and overtime pay, rather than for providing old-age, retirement, or related benefits to the Plaintiffs.

48. Additionally, Jim Fischer's 401(k) contributions are not bona fide, and cannot be excluded from the regular rate computation, given that the amount of contributions is determined pursuant to a formula that both does not have a minimum required contribution amount per contribution period, and permits too great a variation between the minimum and maximum amount to be contributed during each contribution period.

49. Jim Fischer therefore violated the FLSA when it excluded from the computation of the Plaintiffs' regular rate 401(k) contributions that it made to the Plaintiffs accounts for their hours worked on prevailing wage projects.

50. Pursuant to 29 U.S.C. §207(h)(2), daily overtime premiums paid to the Plaintiffs can be used to offset weekly overtime compensation owed to the employee on a dollar for dollar

11

basis. Jim Fischer violated §207(h)(2) by offsetting one hour of weekly overtime worked by the employee by one hour of daily overtime paid to the employee, even when the offset weekly overtime is paid at a higher rate, than the rate for the work for which the employee received daily overtime pay. Jim Fischer consequently failed to pay all weekly overtime premium pay owed to the employee, even after offsetting all daily overtime premium pay received by the employee.

51. Jim Fischer additionally violated the FLSA when it failed to pay to Plaintiff Scotto overtime pay, during a workweek when its payroll records acknowledged that he worked more than 40 hours during the week.

52. Since Jim Fischer did not have any, let alone reasonable grounds for believing that its policies of counting hours worked and computing overtime pay were in compliance with the FLSA, the plaintiffs are entitled to 100% liquidated damages for all overtime pay that Jim Fischer owed to them. The Plaintiffs are also entitled to application of the three year statute of limitations for Jim Fischer's willful violations of the FLSA.

53. The plaintiffs are additionally entitled to their reasonable attorneys fees and costs of bringing their FLSA claims against Jim Fischer.

**Count II.     Claim for Straight Time and Overtime Pay Under Wisconsin Law.**

54. Plaintiffs re-allege, and incorporate by reference, the allegations contained in paragraphs 1- 53 of the Fourth Amended Complaint.

55. Pursuant to DWD §274.03, which is enforceable through the wage payment provisions of Wis. Stat. §109.03(1) and (5), overtime pay must be paid at 1.5 times the regular rate earned by the employee for all hours worked in excess of 40 hours each workweek.

56. Unlike the FLSA, no provision of Wisconsin overtime laws authorizes the employer and employee to pay overtime using the actual rate for the work performed during overtime hours, rather than the regular wage rate earned by the employee during the workweek. Wisconsin law therefore requires paying overtime pay as 1.5 times the regular or average wage rate earned by the employee during the workweek.

57. Jim Fischer therefore violated Wisconsin law by computing the employees' non-prevailing wage overtime pay as 1.5 times their shop rate, rather than 1.5 times the higher average straight time wage rate that they earned during the workweek.

58. Similarly, unlike the FLSA no provision of Wisconsin overtime laws authorizes the employer to offset its obligation to pay weekly overtime premium pay to its employees, by the daily overtime premium pay that it paid to the employee, whether voluntarily or as required by Wisconsin prevailing wage laws.

59. Jim Fischer therefore violated Wisconsin law by waiting until the employee has worked more than 40 hours plus the number of paid daily overtime hours, rather than just more than 40 hours, before beginning to pay weekly overtime pay to its employees.

60. Pursuant to DWD §290.01(10), contributions for an economic benefit must be paid pursuant to a bona fide fund, plan, or program. The determination of the meaning of "fund, plan, or program" is guided by the United States Department of Labor's experience in administering ERISA and other related programs.

61. Jim Fischer's contributions to the 401(k) account are not bona fide given that the primary purpose of the plan is to enable Jim Fischer to avoid paying employment taxes and overtime compensation, rather than to provide systematically for the payment of benefits to

13

employees; and given that the amount of 401(k) contributions is not determined pursuant to a formula that meets legal requirements.

62. Wisconsin law therefore requires Jim Fischer to include the 401(k) contributions when computing the Plaintiffs' regular rate for overtime pay.

63. Because the shop work time, travel time, and working lunch time described in paragraphs 44-45 of the Third Amended Complaint must also count as hours worked under Wisconsin law, the Plaintiffs are entitled to additional straight time pay for the hours worked, as well as all overtime pay that would result by counting the hours worked.

64. Additionally, Jim Fischer's verbal promise to the Plaintiffs that their workday would start at the shop if they rode in a company truck to the jobsite is either enforceable as a contract; or constitutes an enforceable promise so long as not revoked.

65. Wis. Stat. §109.03(1) and (5) requires Jim Fischer to pay to the Plaintiffs all wages, defined as all advantages agreed upon between the employer and the employee, which would include pay for time spent by the Plaintiffs riding in a company truck to the jobsite.

66. Jim Fischer therefore violated its promise/agreement with the Plaintiffs, and Wis. Stat. §109.03(1) and (5), when it failed to pay the Plaintiffs for all instances in which they rode in a company truck to the jobsite.

67. Pursuant to Wis. Stat. §109.03(5), the Named Plaintiffs are entitled to maintain a lawsuit against Jim Fischer for all overtime wages that they are entitled to, but did not receive pursuant to Wis. Stat. §109.03 and DWD Chapter 274. In such a lawsuit they are also entitled to receive the 50% increased damages authorized by Wis. Stat. §109.11(2)(b), along with their

14

reasonable attorneys fees and costs of prosecuting their claims as authorized by Wis. Stat. §109.03(6).

### Count III. Wisconsin Prevailing Wage Claim.

68. Plaintiffs reallege, and incorporate by reference, the allegations contained in paragraphs 1- 67 of the Fourth Amended Complaint.

69. Jim Fischer violated Wisconsin prevailing wage rates by classifying and compensating the Named Plaintiffs as laborers for their concrete finishing work, as well as for their other work that is indispensable to and supporting the concrete finishing work performed by either themselves, or by other members of their crews.

70. Jim Fischer additionally underpaid prevailing wages to the Plaintiffs by claiming a credit for its 401(k) contributions that is greater, than the amount computed by dividing all of its 401(k) contributions during a contribution period by the total number of hours worked by Laughlin during said contribution period.

71. Jim Fischer additionally underpaid prevailing wages to the Plaintiffs by computing the hourly value of its employer paid health insurance contributions by dividing the amount of the contributions by the number of hours worked by the employees during the prior year, to the extent the number of hours worked by the emloyees during the prior year is less than both the pro-rated portion of 2,080 hours worked by the employee during the contribution year, and the actual hours worked by the employee during the contribution year.

72. Because the Plaintiffs would have had additional hours worked on prevailing wage projects over 10 per day, or 40 per week, had Jim Fischer counted their work activities described in paragraphs 39-40 of the First Amended Complaint as hours worked, the Plaintiffs are entitled

15

to be paid for additional hours worked on prevailing wage projects at the overtime rate rather than the straight time rate.

73. Upon information and belief, Jim Fischer failed to pay to the Plaintiffs the correct prevailing wage total package rate for a laborer, even assuming arguendo it can claim a credit equal to the full amount of 401(k) contributions for each prevailing wage hour worked.

74. Upon information and belief the 401(k) contributions that Jim Fischer paid to the Plaintiffs' account for their prevailing wage hours worked is not immediately 100% vested and may be returned to Jim Fischer, so that none of the 401(k) contributions can be counted as bona fide fringe benefit contributions that can offset Jim Fischer's obligation to pay cash wages to the Plaintiffs.

75. Jim Fischer therefore required to pay to the Plaintiffs twice the amount of prevailing wages owed to them, plus their attorneys fees and costs of bringing the claim.

76. Pursuant to Wisconsin prevailing wage laws, all plaintiffs who file the appropriate consent with the Court may join in this claim for unpaid prevailing wages.

WHEREFORE, the Plaintiffs respectfully request the Court to enter an order that:

1. Finds that Jim Fischer is liable to the plaintiffs for all unpaid overtime pay, 100% liquidated damages, and attorneys fees and costs arising out of the Plaintiffs' claims under the Fair Labor Standards Act;

2. Finds that Jim Fischer is liable to the Plaintiffs for all unpaid straight time and overtime wages that they are owed under Wisconsin law, plus 50% increased damages, and their attorneys fees and costs arising out of the Plaintiffs' claims under Wisconsin law;

16

3. Finds that Jim Fischer is liable to the Plaintiffs for all prevailing wages owed, plus 100% increased damages, and their attorneys fees and costs arising out of the Wisconsin prevailing wage laws;

4. Grants to the Plaintiffs such other and further relief as the Court deems just and proper.

Dated this 24th day of April, 2019.

/s/Yingtao Ho
Yingtao Ho
Email: yh@previant.com
Wis. Bar #1045418
Attorney for Plaintiffs
The Previant Law Firm S.C.
310 W. Wisconsin Avenue, Suite 100MW
Milwaukee, WI 53203
Telephone: 414-271-4500
Fax: 414-271-6308