UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JOSHUA LAUGHLIN, and
GREG SCOTTO JUNIOR
on behalf of themselves and
all others similarly situated,

        Plaintiffs,

  v.                                          Case No. 16-C-1342

JIM FISCHER, INC.,

        Defendant.

**ORDER DENYING PLAINTIFFS' MOTION FOR RECONSIDERATION
AND MOTION TO REOPEN DISCOVERY**

      Plaintiffs Joshua Laughlin and Greg Scotto, Jr., allege that their former employer, Defendant Jim Fischer, Inc., violated the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201, *et seq.*, and Wisconsin's wage laws, Wis. Stat. § 109.01, *et seq.*, by, among other things, failing to properly compensate them for hours worked in excess of forty per week. Presently before the court is Plaintiffs' motion for reconsideration of a portion of the court's order denying-in-part and granting-in-part Plaintiffs' motion for summary judgment. Specifically, Plaintiffs ask the court to reconsider its conclusion that the overtime compensation Fischer paid Plaintiffs did not violate Section 207(g)(2) of the FLSA and Wisconsin law. Also before the court is Plaintiffs' motion to reopen discovery that was filed before the court ruled on Plaintiffs' motion for summary judgment. For the reasons that follow, the motions will be denied.

## LEGAL STANDARD

Motions to reconsider denials of summary judgment are governed by Rule 54(b), which provides that non-final orders "may be revised at any time before the entry of a judgment adjudicating all the claims and all the parties' rights and liabilities." Fed. R. Civ. P. 54(b); *Galvan v. Norberg*, 678 F.3d 581, 587 n.3 (7th Cir. 2012) (stating "Rule 54(b) governs non-final orders and permits revision at any time prior to the entry of final judgment, thereby bestowing sweeping authority upon the district court to reconsider a [summary judgment motion]"). "The 'standard courts apply in reconsidering their decisions is generally the same under both Rule 59(e) and Rule 54(b).'" *Cheese Depot, Inc. v. Sirob Imports, Inc.*, No. 14 C 1727, 2019 WL 1505399 at *1 (N.D. Ill. Apr. 5, 2019) (quoting *Morningware, Inc. v. Hearthware Home Prods., Inc.*, No. 09 C 4348, 2011 WL 1376920, at *2 (N.D. Ill. Apr. 12, 2011)).

Motions for reconsideration serve a very limited purpose in federal civil litigation: "to correct manifest errors of law or fact or to present newly discovered evidence." *Rothwell Cotton Co. v. Rosenthal & Co.*, 827 F.2d 246, 251 (7th Cir. 1987) (quoting *Keene Corp. v. Int'l Fidelity Ins. Co.*, 561 F. Supp. 656, 665–66 (N.D. Ill. 1976), *aff'd* 736 F.2d 388 (7th Cir. 1984)). "A 'manifest error' is not demonstrated by the disappointment of the losing party. It is the 'wholesale disregard, misapplication, or failure to recognize controlling precedent.'" *Oto v. Metro. Life Ins. Co.*, 224 F.3d 601, 606 (7th Cir. 2000) (quoting *Sedrak v. Callahan*, 987 F. Supp. 1063, 1069 (N.D. Ill. 1997)). "Such motions are disfavored and should be 'rare.'" *Acantha LLC v. DePuy Orthopaedics Inc.*, No. 15-C-1257, 2018 WL 2290715, at *1 (E.D. Wis. May 19, 2018) (quoting *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990)).

**ANALYSIS**

**A.      Motion for Reconsideration**

On March 31, 2019, the court granted-in-part and denied-in-part Plaintiffs' motion for summary judgment. Relevant to Plaintiffs' motion for reconsideration, the court denied summary judgment in favor of Plaintiffs on the issue of whether Fischer failed to pay Plaintiffs overtime in accordance with the requirements of the FLSA. In reaching its conclusion, the court relied on 29 U.S.C. § 207(g)(2) and the regulations interpreting that provision. Section 207(g)(2) provides:

> No employer shall be deemed to have violated subsection (a) by employing any employee for a workweek in excess of the maximum workweek applicable to such employee under such subsection if, pursuant to an agreement or understanding arrived at between the employer and the employee before performance of the work, the amount paid to the employee for the number of hours worked by him in such workweek in excess of the maximum workweek applicable to such employee under such subsection—
>
> . . .
>
> (2) in the case of an employee performing two or more kinds of work for which different hourly or piece rates have been established, is computed at rates not less than one and one-half times such bona fide rates applicable to the same work when performed during nonovertime hours.

The regulations interpreting this provision state that employees who are paid on the basis of a piece rate for the work performed during nonovertime hours or employees who perform two or more different kinds of work for which different straight time hourly rates are established may agree with their employer in advance of the performance of the work that they will be paid during overtime hours at a rate not less than one and one-half times the hourly nonovertime rate for the work being performed during the overtime hours. *See* 29 C.F.R. §§ 778.418, 778.419.

3

This court denied Plaintiffs' motion because there was a factual issue as to whether an agreement was reached between Plaintiffs and Fischer:

> Fischer's employee handbook informed employees that "[h]ours worked over forty-hours (40) per week will be paid at time and one-half (1 ½) of the job rate." [Dkt] No. 83-5 at 3. As Fischer employees received this handbook prior to their first time on a jobsite and signed the handbook stating that they understood all of its terms, it was permissible for Fischer to calculate overtime premiums based on one and one-half times the rate applicable to the specific type of work. That appears to be what Fisher did here. If a bona fide agreement was reached, then no FLSA violation occurred. Plaintiffs' motion for summary judgment on this issue will therefore be denied.

Dkt. No. 107 at 19.

Plaintiffs assert that the court erred when it stated "[i]f a bona fide agreement was reached, then no FLSA violation occurred," *id.*, because the compensation they received is not in accordance with § 207(g)(2)'s requirement that overtime pay be "computed at rates no less than one and one-half times such bona fide rates applicable to the same work when performed during nonovertime hours."

As an example of Fischer's violation of § 207(g)(2), Plaintiffs cite the week of July 31 through August 6, 2016. On Monday, August 1, Laughlin worked 10.75 hours. In accordance with the agreement between Fischer and its employees that hours worked above ten in a given day would be paid at one and one-half times the rate of the work being done, Laughlin was paid a daily overtime premium for the 0.75 hours he worked above 10. Of the 0.75 hours, 0.50 were paid at a daily overtime premium based on the higher laborer rate of $22.14, and 0.25 were paid at a daily overtime premium based on the lower mobilization rate of $20.00. Laughlin then proceeded to work ten hours on Tuesday and ten hours on Wednesday, all of which he was compensated for at an hourly rate based on the type of work done. On Thursday, August 4, Laughlin worked 9.50

4

hours, for which he was compensated at the normal laborer rate. On Friday, August 5, Laughlin worked a total of 10.50 hours, the first 0.50 of which were compensated at the normal laborer rate, and the remaining ten at an overtime rate of one and one-half times the laborer rate. Plaintiffs argue that after Laughlin worked 9.25 hours on Thursday, the remaining 0.25 hours worked Thursday and the first 0.50 hours worked Friday should have been paid at a weekly overtime rate equal to one and one-half times the rate of the work done because Laughlin had worked a total of 40 hours for the week at that point—10.75 hours Monday, 10 hours Tuesday, 10 hours Wednesday, and 9.25 on Thursday. As a result of Fischer's failure to pay Laughlin at one and one-half times the rate for those 0.75 hours, and the fact that those hours worked were done at the higher laborer rate, Plaintiffs assert that Fischer did not fully compensate Laughlin because a portion of the daily overtime from Monday was calculated based on the lower laborer rate, thus resulting in him receiving twenty-six cents less in overtime premium pay for the week than he would have received had those 0.75 hours been paid at the overtime premium rate.

In essence, Plaintiffs contend that daily overtime premiums can only offset weekly overtime premiums on a dollar-for-dollar basis, i.e., the amount of daily overtime premium paid must equal the amount of weekly overtime premium owed, and that an hour-for-hour offset, where the number of hours paid at a daily overtime premium offsets an equal number of hours when calculating when an employee reaches 40 hours worked for the week, is impermissible. The regulations interpreting § 207(g)(2), however, expressly allow for an hour-for-hour offset:

> Where overtime rates are paid pursuant to statute or contract for hours in excess of 8 in a day, or in excess of the applicable maximum hours standard, or in excess of the employees' normal working hours or regular working hours . . . the requirement of section 7(g)(1) and 7(g)(2) will be met if the number of such hours during which

5

> overtime rates were paid equals or exceeds the number of hours worked in excess of the applicable maximum hours standard for the particular workweek.

29 C.F.R. § 778.421 (entitled Offset Hour for Hour). Here, the total number of hours compensated at an overtime premium rates, 10.75, equals the total number of hours worked in excess of the 40-hour weekly maximum, 10.75, thus satisfying the requirements of § 778.421 and 29 U.S.C. § 207(g)(2). Regarding the twenty-six cent disparity, "[i]t is not necessary to determine whether the total amount of compensation paid for such hours equals or exceeds the amount of compensation which would be due at the applicable rates for work performed during the hours after the applicable maximum in any workweek." 29 C.F.R. § 778.421. Thus, the twenty-six cent difference is irrelevant.

Plaintiffs' reliance on *Estrella v. P.R. Painting Corp.*, 356 F. App'x 495 (2d Cir. 2009), where the court affirmed the trial court's decision, albeit on different grounds, that the employer's compensation method of its employees who performed two or more kinds of work at different hourly rates did not satisfy § 207(g)(2)'s requirements, is misplaced. There, the employer always paid its employees at a higher rate for the first 35 hours worked each week and at a lower rate for the next 5 hours worked "and at one-and-a-half times the lower rate for every hour worked over 40." *Id.* at 496. Because the employer could not definitively prove that every hour worked over 40 was spent doing lower-rate work, the court affirmed the trial court's decision establishing liability because the employer could not prove that its payment method satisfied § 207(g)(2)'s requirements. *Id.* at 497. Contrary to Plaintiffs' portrayal of the case, the employer did not satisfy § 207(g)(2)'s requirements because it could not prove that the work performed was actually lower rate work, not the fact that the overtime work was compensated at a lower rate. The court even acknowledged that

if in fact all the overtime worked was indeed work done at the lower rate, § 207(g)(2)'s requirements would be met: "[i]f . . . [the employees] in fact worked all overtime hours on MRA jobs—to which the lower rate applied—[the employer's] payment method satisfies § 207(g)(2) because it compensated [the employees] at 'one and one-half times' the rate 'applicable to the same work when performed during nonovertime hours.'" *Id.* Here, there is no allegations or indications that Fischer paid Plaintiffs at a different rate than the rate for the type of work performed. The fact that the work performed may happen to be at a lower rate does not violate § 207(g)(2). Consequently, this court's statement that "[i]f a bona fide agreement was reached, then no FLSA violation occurred" is not a manifest error of law.

A further point should be made. Plaintiffs' motion for summary judgment sought a ruling on the proper method to calculate overtime for employees who are paid at different rates for different work throughout the week, not a determination of the total amount of unpaid overtime to which Plaintiffs believe they are entitled. Because of the opaque and confusing language of the regulations, calculation of overtime pay for employers who pay their employees at different rates for different work, or who pay occasional non-discretionary bonuses or commissions, can be a complex task over which even reasonable accountants can disagree. Sometimes, the amounts in dispute are minuscule. It is within this legal landscape that Plaintiffs' claims arise. In support of their argument that they were underpaid, Plaintiffs offer by way of example one week in which Laughlin, who worked for Jim Fischer for only two months, worked 10.75 hours of overtime. Plaintiffs' calculation of overtime for that week yields an amount that is only 26 cents more than the actual amount paid by Jim Fischer. At this point, it is unclear whether adopting Plaintiffs' manner of calculating overtime for other weeks would yield any greater difference from what was

actually paid, the same difference, or even less. Yet, Plaintiffs have not only submitted extensive summary judgment filings on the issue, but now seek reconsideration of a ruling that did not dismiss their claim and instead simply concluded that factual issues remained. One can only hope that the parties, faced with a trial over so small an amount of damages, will be able to reach a settlement of the claim. Plaintiffs should also bear in mind that "although the [attorneys] fee award need not be proportionate to the amount of damages a plaintiff actually recovers, it is a factor that a court should consider when contemplating a reduction of the modified lodestar amount." *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 558 (7th Cir. 1999) (citing *City of Riverside v. Rivera*, 477 U.S. 561, 574 (1986)). In any event, the motion for reconsideration is denied.

**B.  Motion to Reopen Discovery**

Prior to the court's order denying-in-part and granting-in-part Plaintiffs' motion for summary judgment, Plaintiffs filed a 7(h) motion to reopen discovery related to "whether American Funds assumed or disclaimed legally required fiduciary responsibilities with respect to prevailing wage 401(k) contributions that Jim Fischer deposited with American funds." Dkt. No. 98 at 4. In its order on Plaintiffs' motion for summary judgment, the court cited 29 C.F.R. § 778.215(a)(4), which states "[t]he employer's contributions must be paid irrevocably to a trustee or third person pursuant to an insurance agreement, trust or other funded arrangement. The trustee must assume the usual fiduciary responsibilities imposed upon trustees by applicable law." Because the regulation "is silent as to whether a third person must assume the usual fiduciary responsibilities," and Fischer makes non-revocable 401(k) contributions to a third-party custodian, American Funds, the court held that Fischer's 401(k) plan meets § 778.215(a)(4)'s requirements. Dkt. No. 107 at 16. Consequently, there is no need to reopen discovery to determine if American Funds assumed a

fiduciary responsibility because whether American Funds has assumed such a responsibility is irrelevant to determining whether Fischer's 401(k) plan is a bona fide plan and its contributions to it can be excluded under 29 U.S.C. § 207(e)(4). As a result, Plaintiffs' motion to reopen will be denied.

## CONCLUSION

For the foregoing reasons, Plaintiffs' Motion for Reconsideration (Dkt. No. 108) and Motion to Reopen Discovery (Dkt. No. 98) are **DENIED**.

**SO ORDERED** this  16th  day of May, 2019.

s/ William C. Griesbach
William C. Griesbach, Chief Judge
United States District Court
